**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: TENNESSEE SENATE BILL 2040 | Master Case No.:<br>3:26-cv-685<br><br>Consolidated with Case Nos.:<br>3:26-cv-806<br>3:26-cv-816<br>3:26-cv-818<br><br>JUDGE RICHARDSON<br><br>MAGISTRATE JUDGE FRENSLEY |

**PLAINTIFF PHARMACEUTICAL CARE MANAGEMENT ASSOCIATION'S MEMORANDUM OF LAW IN OPPOSITION TO JOINT MOTION TO QUASH SUBPOENAS ISSUED TO NON-PARTIES C. MORGAN HONEYCUTT AND JACOB STANDEFER**

## TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 2

A. PCMA files this suit challenging the Act ........ 2

B. PCMA's subpoenas and Standefer and Honeycutt's responses ........ 3

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

I. The sought-after documents are highly relevant to PCMA's claims ........ 7

A. The Act's discriminatory purpose is highly relevant to PCMA's dormant Commerce Clause claim ........ 7

B. The requested information is relevant to PCMA's preemption claims ........ 11

II. The subpoenas are proportional and not unduly burdensome ........ 12

III. The First Amendment does not bar production ........ 13

IV. The Pharmacists' motion to quash is procedurally improper ........ 16

CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Beverage Ass'n v. Snyder*,
735 F.3d 362 (6th Cir. 2013) ........................................ 8

*Americans for Prosperity Foundation v. Bonta*,
594 U.S. 595 (2021) ........................................ 15

*Bacchus Imports, Ltd. v. Dias*,
468 U.S. 263 (1984) ........................................ 7

*C & A Carbone, Inc. v. Town of Clarkstown*,
511 U.S. 383 (1994) ........................................ 9

*Chemical Waste Management, Inc. v. Hunt*,
504 U.S. 334 (1992) ........................................ 7

*Cleckner v. 3M Company*,
2024 WL 7013975 (M.D. Penn. Nov. 8, 2024) ........................................ 6

*In re DG Acquisition Corp.*,
151 F.3d 75 (2d Cir. 1998) ........................................ 6

*Doe v. McMillan*,
412 U.S. 306 (1973) ........................................ 10

*Doe v. Reed*,
561 U.S. 186 (2010) ........................................ 16

*Eastern Kentucky Resources v. Fiscal Court of Magoffin County*,
127 F.3d 532 (6th Cir. 1997) ........................................ 7, 8

*Egelhoff v. Egelhoff*,
532 U.S. 141 (2001) ........................................ 11

*Energy Michigan, Inc. v. Michigan Public Service Commission*,
126 F.4th 476 (6th Cir. 2025) ........................................ 7, 8

*Family Winemakers of California v. Jenkins*,
592 F.3d 1 (1st Cir. 2010) ........................................ 9

*Fusion Elite All Stars v. Varsity Brands, LLC*,
340 F.R.D. 255 (W.D. Tenn. 2022) ........................................ 12

*Ghandi v. Police Department of City of Detroit*,
747 F.2d 338 (6th Cir. 1984) .......... 5

*Gravel v. United States*,
408 U.S. 606 (1972).......... 10

*Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*,
988 F.3d 260 (6th Cir. 2021) ..........5, 6

*Hendricks v. Total Quality Logistics, LLC*,
275 F.R.D. 251 (S.D. Ohio 2011).......... 5

*Hickman v. Taylor*,
329 U.S. 495 (1947).......... 5

*IESI AR Corp. v. Northwest Arkansas Regional Solid Waste Management District*,
433 F.3d 600 (8th Cir. 2006) .......... 8

*John B. v. Goetz*,
879 F. Supp. 2d 787 (M.D. Tenn. 2010) .......... 6

*Lewis v. ACB Bus. Servs., Inc.*,
135 F.3d 389 (6th Cir. 1998) .......... 5

*Marshall v. Bramer*,
828 F.2d 355 (6th Cir. 1987) .......... 14

*Marylanders for Fair Representation, Inc. v. Schaefer*,
144 F.R.D. 292 (D. Md. 1992).......... 7

*McKee Foods Corp. v. BFP Inc.*,
173 F.4th 242 (6th Cir. 2026).......... 11

*McNeilus Truck & Manufacturing, Inc. v. State ex rel. Montgomery*,
226 F.3d 429 (6th Cir. 2000) .......... 8

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996).......... 11

*In re Modern Plastics*,
890 F.3d 244 (6th Cir. 2018) .......... 12

*In re Motor Fuel Temperature Sales Practices Litigation*,
641 F.3d 470..........14, 15

*NAACP v. Alabama*,
357 U.S. 449 (1958)....................................13, 14

*Nix v. Sword*,
11 F. App'x 498 (6th Cir. 2001) .................................... 12

*Noble Roman's, Inc. v. Hattenhauer Distributing Co.*,
314 F.R.D. 304 (S.D. Ind. 2016) .................................... 6

*North Carolina State Conference of NAACP v. McCrory*,
831 F.3d 204 (4th Cir. 2016) .................................... 13

*Reed v. Illinois*,
318 F.R.D. 77 (N.D. Ill. 2016).................................... 6

*South Carolina Education Ass'n v. Campbell*,
883 F.2d 1251 (4th Cir.1989) .................................... 7

*State Farm Mutual Automobile Insurance Co. v. Elite Health Centers, Inc.*,
364 F. Supp. 3d 758 (E.D. Mich. 2018).................................... 5

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*,
588 U.S. 504 (2019).................................... 8

*United States v. Brewster*,
408 U.S. 501 (1972).................................... 10

*United States v. O'Brien*,
391 U.S. 367 (1968).................................... 8

*Veasey v. Abbott*,
830 F.3d 216 (5th Cir. 2016) (en banc) .................................... 13

*West Lynn Creamery, Inc. v. Healy*,
512 U.S. 186 (1994).................................... 7

*Whole Woman's Health v. Smith*,
896 F.3d 362 (5th Cir. 2018) .................................... 15

*Wiwa v. Royal Dutch Petroleum Co.*,
392 F.3d 812 (5th Cir. 2004) .................................... 5

**Statutes**

Employee Retirement Income Security Act of 1974....................................1, 3, 11

Tenn. Code Ann. § 63-10-[ ](b) .................................... 2

**Other Authorities**

Fed. R. Civ. P. 26 .......................................................... 5, 6, 12

Fed. R. Civ. P. 45 .......................................................... *passim*

Tennessee Senate Bill 2040 .......................................................... 1

U.S. Const. amend. I .......................................................... 1, 7, 14, 16

U.S. Const. art. I, § 8, cl. 3 .......................................................... 3, 7, 8, 10

## INTRODUCTION

Plaintiff Pharmaceutical Care Management Association (PCMA) filed this suit to challenge Tennessee Senate Bill 2040 (the Act) as unconstitutional and preempted by federal law because, among other things, it impermissibly discriminates against out-of-state competition in contravention of the Dormant Commerce Clause and is preempted by the Employee Retirement Income Security Act of 1974 (ERISA) and Medicare Part D.

To support its claims, PCMA served subpoenas on two pharmacists who are set to benefit from the Act, who publicly spoke out about the Act (reciting consistent talking points), and whom PCMA believe coordinated with others in promoting the Act: Morgan Honeycutt and Jacob Standefer (the Pharmacists). Rather than respond to the subpoenas or properly serve objections, the Pharmacists joined the Joint Motion and Memorandum to Quash (the Motion) (Dkt. No. 73) filed by a third-party trade association, the Tennessee Pharmacists Association (TPA) and its leadership.

In the Motion, the Pharmacists concede that they possess Act-related responsive materials, but they refuse to produce a single document, refuse to engage in any good-faith scope-narrowing discussions with PCMA's counsel (Honeycutt Decl. ¶ 5; Standefer Decl. ¶ 5), and instead have immediately requested the Court's intervention to quash the subpoenas before even serving written objections, as required by Rule 45(d)(2)(B).

The Motion seeks to quash the PCMA subpoenas in their entirety based on categorical relevance, burden, and First Amendment theories. The Motion ignores Sixth Circuit and Supreme Court cases holding that the sought-after documents are directly relevant to PCMA's claims, and Rule 45 does not justify a blanket refusal where the recipients have not identified which requests are objectionable, what burden each request imposes, or which documents are allegedly privileged. The Motion should be denied in the entirety, and the Court should instead order the Pharmacists to produce responsive documents.

## BACKGROUND

### A. PCMA files this suit challenging the Act

The Motion's background is more of an advocacy piece against pharmacy benefit managers (PBMs) than a useful background on the Motion's legal arguments. Like the Motion's legal arguments, its attempt to vilify PBMs is meritless.

The task of designing and administering prescription drug benefits on behalf of an employer, insurer, or other benefit sponsor is incredibly complex. *See* Compl. ¶ 1. Sponsors must identify covered drugs, determine how costs are allocated across participants, negotiate rates with manufacturers or wholesalers, contract with thousands of "in network" pharmacies, negotiate reimbursement terms with these pharmacies, develop a system for processing claims at the point of sale, provide legally mandated notices and appeal procedures, and cover a myriad of administrative tasks. *Id.* This is where PBMs come in. PBMs assist with forming and administering a sponsor's prescription drug benefits by performing all of the tasks just mentioned. *See id.* ¶ 36.

PBMs also often own or have indirect interests in pharmacies. Direct corporate affiliation with pharmacies allows PBMs to provide sponsors of prescription drug benefits more cost-effective and higher-quality services, which they achieve through economies of scale and greater leverage over drug distribution. *See* Compl. ¶¶ 3, 37–48 (discussing various ways PBMs reduce costs and increase quality). Independent pharmacies often are unable to match these efficiencies and typically charge higher prices for less comprehensive service. *Id.* ¶ 4. Rather than compete on price or quality, independent pharmacies in Tennessee turned to the General Assembly to bar out-of-state, PBM-affiliated competitors from the market. *Id.* The General Assembly obliged by passing the Act. *Id.*

According to the Act's plain terms, no person or entity can directly or indirectly own or control (1) a pharmacy, (2) a health insurance issuer, and (3) a PBM at the same time. *See* Compl. ¶ 53 (citing Tenn. Code Ann. § 63-10-[ ](b)). The Act appears to be based on, and closely

resembles, a similar law that Arkansas enacted in 2025. The Eastern District of Arkansas notably enjoined enforcement of that Arkansas law on the ground it violated the Commerce Clause. *See* Compl. ¶ 8.

The evident purpose of the Act—which requires PBMs to disaffiliate from pharmacies doing business in Tennessee—is to eliminate out-of-state competition and protect local, independent pharmacists. *See id.* ¶¶ 63–71. The Act impacts only out-of-state companies, and statements about the Act by public representatives suggest that the Act's purpose is protection of local interests. *See id.* ¶¶ 66–68.

Based on the protectionist purpose and effect of the Act, PCMA and three of its members sued for a permanent injunction against enforcement because (among other things) the Act violates the Commerce Clause. *See generally* Compl. ¶¶ 72–107.

**B. PCMA's subpoenas and Standefer and Honeycutt's responses**

Shortly after filing suit, PCMA served identical subpoenas on the Pharmacists to obtain information uniquely held by Tennessee pharmacists who publicly advocated for the Act, coordinated with TPA—the Act's self-proclaimed lead proponent—around the Act's passage, and are among its intended beneficiaries. The subpoenas contain fourteen narrowly tailored categories of documents, limited in time-frame, seeking highly relevant information concerning the purpose, intended effect, and anticipated impact of the Act and its relation to the similar Arkansas law that has been enjoined.

The requests seek existing documents and communications related to: the potential or actual adoption of the Act (Request 1); whether the Act is or may be preempted by Medicare or ERISA and the applicability of the Act to licensed PBM services provided to self-funded or self-insured ERISA plans (Requests 2–4); documents reviewed, received, prepared, or sent relating to the Act, including communications with Tennessee General Assembly members (Request 5); the closure of pharmacies related to PBM practices (Request 6); the drafting, development, or

promotion of the Act, including draft bill language, legislative strategy memoranda, talking points, and lobbying plans (Request 7); communications with specifically identified Tennessee legislators and staff (Request 8); communications with TPA or other trade associations concerning the Act, PBM regulation, or pharmacy-ownership restrictions (Request 9); financial contributions to Tennessee General Assembly members (Request 10); legislators' potential conflicts of interest (Request 11); coordination among independent pharmacies concerning advocacy for the Act (Request 12); Arkansas Act 624 and efforts to model Tennessee's legislation on other states' laws (Request 13); and the Act's potential impact on pharmacies, including potential closures, layoffs, or increased business (Request 14). *See* Dkt. 73-4 at 9–10; Dkt. 73-5 at 9–11. These are document requests directed to Honeycutt's and Standefer's own Act-related files, not requests for narrative opinions or for documents outside their possession.

Honeycutt is the CEO of Mac's Hometown Pharmacy, a licensed Tennessee pharmacist, and a member of TPA. Honeycutt Decl. ¶ 3. Standefer is the CEO of Access Pharmacy in Chattanooga, Tennessee and is also a licensed pharmacist and TPA member. Standefer Decl. ¶ 3. Both publicly advocated for the Act in their capacities as TPA members and independent pharmacists. Honeycutt gave media interviews and posted on social media supporting the Act, while Standefer gave media interviews that he acknowledges remain "readily available on-line through a simple search for [his] name and 'pbm.'" Honeycutt Decl. ¶ 5, Standefer Decl. ¶ 5. Both are among the local independent pharmacists the Act is intended to benefit at the expense of out-of-state competitors. Critically, both Honeycutt and Standefer concede that they possess responsive documents. Honeycutt Decl. ¶ 5; Standefer Decl. ¶ 5.

Rather than produce any documents or serve written objections as required by Rule 45(d)(2)(B), Honeycutt and Standefer joined TPA, TPA's CEO Anthony Pudlo, and TPA's lobbyist Garrett Johnson in filing a Joint Motion to Quash. *See* Dkt. 73. PCMA offered to discuss ways to reduce any potential burden on Honeycutt and Standefer, but their counsel claimed that they

would not produce documents on relevance grounds rather than engaging in scope-narrowing discussions. Dkt. 73 at iii. Neither Honeycutt nor Standefer produced a single document, identified any specific cost or volume of production, or served the written objections that Rule 45(d)(2)(B) requires.

## LEGAL STANDARD

A court "may hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena or order related to it." Fed. R. Civ. P. 45(g). Federal Rule of Civil Procedure 45(d)(3)(A) provides that a court "must quash or modify a subpoena" only if it "subjects a person to undue burden." The movant bears the burden of establishing that a subpoena imposes an undue burden. *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011). Courts "enjoy[] broad discretion in managing discovery," and modifying a subpoena is ordinarily preferable to quashing it outright. *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 354 (6th Cir. 1984); *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

Although Rule 45 supplies the procedural vehicle, the scope of non-party discovery is governed by Rule 26. *See State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.*, 364 F. Supp. 3d 758, 767 (E.D. Mich. 2018) (stating that "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26"). Rule 26(b)(1) limits discovery to nonprivileged material relevant to a party's claim or defenses and proportional to the needs of the case, considering the importance of the issues, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1); *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 274 (6th Cir. 2021). Relevance is broadly construed at the discovery stage. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Though the Sixth Circuit has recognized that district courts have both the "power—and duty" to limit disproportionate requests, *Helena*

*Agri-Enterprises*, 988 F.3d at 273–74, Rule 26 remains broad and permits discovery that bears materially on the claims or defenses in the case. *See John B. v. Goetz*, 879 F. Supp. 2d 787, 860 (M.D. Tenn. 2010) (explaining that "relevant" information includes probative to a claim or defense and could "lead to the discovery of admissible evidence").

A party moving to quash must establish undue burden with a "particularized showing," and vague assertions of inconvenience do not suffice. *See Reed v. Illinois*, 318 F.R.D. 77 (N.D. Ill. 2016); *see also Cleckner v. 3M Company*, 2024 WL 7013975 (M.D. Penn. Nov. 8, 2024) (quash movant must demonstrate "a clearly defined and serious injury"). Vague, conclusory assertions of hardship are insufficient. *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016); *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998). If a recipient withholds material as privileged or work product, Rule 45(e)(2)(A) requires an express claim and a description sufficient to permit assessment of the claim. The Motion supplies no request-specific burden estimate, privilege log, or document-by-document basis for withholding all responsive materials.

**ARGUMENT**

The PCMA subpoenas to the Pharmacists are valid, enforceable, and properly served, complying in all respects with the requirements of Rule 45. The requests are materially narrower than the Motion suggests, and the Pharmacists' arguments do not furnish an "adequate excuse" for avoiding the subpoenas in their entirety. The Motion treats Honeycutt and Standefer as though they were state legislators and treats PCMA's document requests as though they sought TPA membership lists, donor records, or every internal advocacy file. PCMA's subpoenas do neither: they seek Act-specific documents from two private pharmacists who publicly advocated for the law and stand to benefit from it.

The Motion should be denied for four independent reasons. *First*, the requested information bears directly on the Act's purpose, anticipated effects, and practical operation, as well as the factual predicates of PCMA's preemption claims. *Second*, the requests are subject and time

limited, and the Pharmacists have failed to make the concrete showing required to establish undue burden: their declarations are entirely conclusory, offering no estimates of volume, cost, or time required for compliance. *Third*, the First Amendment does not create a blanket bar to targeted civil discovery, particularly where the record shows no objectively reasonable probability of threats, harassment, reprisals, or impairment of associational activity, and any sensitive material can be protected. *Fourth*, the Pharmacists did not serve timely written objections as required by Rule 45(d)(2)(B).

## I. The sought-after documents are highly relevant to PCMA's claims

### A. The Act's discriminatory purpose is highly relevant to PCMA's dormant Commerce Clause claim

The Pharmacists' principal relevance argument is that the dormant Commerce Clause inquiry begins and ends with statutory text, rendering extrinsic evidence of discriminatory purpose categorically irrelevant. This misreads the very authorities they cite.

As the Sixth Circuit repeatedly has held, there are "three ways a state law can violate the [Commerce Clause's] antidiscrimination rule: facially, purposefully, or in practical effect." *Energy Mich.*, 126 F.4th at 486–87; *accord E. Ky. Res. v. Fiscal Court of Magoffin County*, 127 F.3d 532 (6th Cir. 1997). That follows from the Supreme Court's own cases, which likewise make clear that a "finding that state legislation constitutes 'economic protectionism'" in violation of the Commerce Clause "may be made on the basis of *either* discriminatory purpose . . . *or* discriminatory effect." *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270 (1984) (emphasis added); *accord Chemical Waste Management, Inc. v. Hunt*, 504 U.S. 334 (1992) (similar); *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 201 (1994) (Commerce Clause analysis is not rigid, but is rather "a sensitive, case-by-case analysis of purposes and effects"). And "judicial inquiry into legislative motive is appropriate where the very nature of the constitutional question requires an inquiry into legislative purpose." *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 304 (D. Md. 1992) (quoting *S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1259 (4th Cir.1989), in turn quoting

*United States v. O'Brien*, 391 U.S. 367, 383 n.30 (1968)).

As recently as 2025, the Sixth Circuit held that a law's discriminatory purpose can violate the Commerce Clause, including noting that an "inquiry into purpose is distinct from inquiry into the law's text." *Energy Mich.*, 126 F.4th at 491. Accordingly, whether the Act has a discriminatory purpose is highly relevant.

Because legislative purpose is relevant, so too are any documents that may be turned over in response to the subpoenas. While a law's text is persuasive evidence of purpose, courts do not limit their review to the text alone, but also review "the legislative history" and other evidence of "legislative intent." *Am. Bev. Ass'n v. Snyder*, 735 F.3d 362, 371 (6th Cir. 2013). The Sixth Circuit has held that a law's purpose can be ascertained from, among other things, communications between legislators and third parties (*McNeilus Truck & Mfg., Inc. v. State ex rel. Montgomery*, 226 F.3d 429, 443 (6th Cir. 2000)), documents from third parties about the law (*Snyder*, 735 F.3d at 371–72), and documents held by the state officials discussing the law (*E. Ky. Res.*, 127 F.3d at 542). Other courts broadly agree that internal memoranda and legislative documents are competent to show a discriminatory legislative purpose. *See also Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504 (2019) (reviewing general historical and factual context for an enactment invalidated under the Commerce Clause); *IESI AR Corp.*, 433 F.3d at 604 ("the sequence of events preceding the regulation's adoption" are considered in determining whether a law has a discriminatory purpose).

The Pharmacists' communications with TPA, other pharmacy organizations, and Tennessee legislators are probative of legislative purpose. PCMA seeks these communications as private, pharmacist-advocates who publicly supported the Act and coordinated regarding its design and enactment. PCMA does not seek testimony about official legislative acts and will not ask that the Court reconstruct each legislator's state of mind. Outside groups worked with bill sponsors to amend the legislation, ensuring that an in-state, pharmacist-run PBM would be carved out. *See*

Compl. ¶ 11. Indeed, the Motion describes the Pharmacists as proponents and places their advocacy and coordination at the center of the discovery dispute. As TPA members who actively communicated with legislators or lobbyists about the Act, Honeycutt and Standefer likely possess or received communications reflecting legislative intent and statutory purpose. Those materials may show how the proposal was presented, amended, and understood by its private and public proponents, including whether the Act's exceptions and structure were designed to address particular competitive concerns.

While the Motion labels several requests as an inquiry into motive, the requests in fact seek targeted information tied to the Act. Requests 1 and 7 seek materials concerning adoption, drafts, amendments, and development or promotion that may show which entities and relationships the Act was designed to reach. *See, e.g.*, Dkt. 73-4 (Requests 1, 7). Evidence that the Pharmacists advocated a regulatory approach narrowed to target only out-of-state entities would lend direct support to PCMA's claim that the Act has a discriminatory purpose. Requests 5, 8, and 9 seek communications with legislators and others that may show how the proposal was presented and refined. *Id.* (Requests 5, 8, 9). The Pharmacists' communications with TPA and other trade associations could reveal the coordinated advocacy infrastructure that produced the Act's discriminatory design. *See, e.g.*, *id.* (Request 9); *see also C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390–94 (1994) (examining whether local legislation was designed to benefit local interests at expense of interstate commerce); *Family Winemakers of California v. Jenkins*, 592 F.3d 1, 10–13 (1st Cir. 2010) (considering legislative history and advocacy context in analyzing discriminatory purpose behind state alcohol distribution laws).

Request 12 seeks information about coordination among independent pharmacies; Request 13 seeks information about Arkansas Act 624 and related materials; and Requests 6 and 14 seek factual material about pharmacy closures, layoffs, increased business, and anticipated access effects. *See, e.g.*, Dkt. 73-4 (Requests 6, 12–14). These communications could provide

evidence that the Act was deliberately modeled on another state's framework for excluding out-of-state competitors that has already been enjoined for its Commerce Clause violations and is directly relevant to discriminatory purpose. Moreover, documents reflecting advocates' understanding of the Act's expected impact on out-of-state pharmacies and the alleged harms motivating the legislation—such as pharmacy closures—are relevant to the Commerce Clause analysis and to whether the Act's stated justifications are pretextual, as PCMA alleges. *See, e.g.*, *id.* (Requests 6, 14); Compl. ¶ 70. Requests 10 and 11 seek evidence bearing on whether the legislation served parochial economic interests rather than the asserted regulatory objectives. *See, e.g.*, Dkt. 73-4 (Requests 10-11); Compl. ¶ 67 (alleging sponsor ties to independent pharmacies and TPA campaign contributions). This is all discovery tightly targeted at the purpose, effects, and factual context of the challenged statute, and relevance at this stage does not turn on whether every document will ultimately be admissible.

The Pharmacists suggest in a footnote that the materials would be covered by legislative privilege if sought from legislators themselves. That is wrong; that the materials are in the hands of private individuals means, *ipso facto*, that the communications either are not integral to the lawmaking process or at least the any privilege has been waived. *See generally* Dkt. 79.

Honeycutt and Standefer are pharmacists and business owners, not legislators, legislative staff, or state custodians. Speech or Debate protection covers legislative acts of federal legislators and aides; it does not convert a private advocate's own documents into privileged legislative records merely because a communication concerns legislation or was sent to a state legislator. *See United States v. Brewster*, 408 U.S. 501, 516, 525 (1972) ("In no case has this Court ever treated the [Speech or Debate] Clause as protecting all conduct relating to the legislative process."); *Gravel v. United States*, 408 U.S. 606, 616–18, 625 (1972) ("That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature."); *Doe v. McMillan*, 412 U.S. 306, 313–16 (1973) ("Congressmen and their aides are

immune from liability for their actions within the 'legislative sphere[.]'").

Beyond that, the Motion identifies no privilege log or document-specific basis for extending that protection to Honeycutt's or Standefer's files. If a particular document contains protected attorney-client communications, work product, or another recognized privilege, Rule 45(e)(2)(A) requires an express, adequately described claim and the Court can address it individually. The privilege argument cannot support a blanket refusal to produce any responsive materials.

In sum, even accepting the Pharmacists' premise that the Act must ultimately be judged by its text and effects, the requested materials remain relevant to the Act's purpose, design, anticipated consequences, and functional operation. The sought information is therefore highly relevant and not covered by any privilege.

**B. The requested information is relevant to PCMA's preemption claims**

The Pharmacists concede that PCMA requested documents concerning whether the Act may be preempted by Medicare or ERISA and whether the Act could apply to ERISA plans. *See* Motion at 14. The Pharmacists then puzzlingly assert that such information is not relevant to PCMA's ERISA and Medicare preemption claims after all.

The Pharmacists assert that because ERISA and Medicare preemption are questions of law, evidence outside the text of the Act is per se irrelevant. Notably, the Pharmacists do not cite a case for such a proposition since the Sixth Circuit and Supreme Court analyze facts in considering ERISA and Medicare preemption challenges. *See Egelhoff v. Egelhoff*, 532 U.S. 141, 148–50 (2001) (examining how a state law actually affects plan administration and requiring analysis of its practical consequences under ERISA); *McKee Foods Corp. v. BFP Inc.*, 173 F.4th 242, 256–64 (6th Cir. 2026) (analyzing how Tennessee PBM regulations constrain pharmacy-network design for ERISA); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485–86 (1996) (conducting inquiry into the practical operation of state requirements in the context of an express Medicare preemption case).

## II. The subpoenas are proportional and not unduly burdensome

The proportionality and undue burden analysis under Rules 26(b)(1) and 45(d)(1) is case-specific and considers and requires consideration of relevance, the importance of the issues, the parties' relative access to information and resources, the importance of the discovery, and whether burden or expense outweighs likely benefit. Fed. R. Civ. P. 26(b)(1); *see also In re Modern Plastics*, 890 F.3d 244, 251–52 (6th Cir. 2018). Nonparty status receives appropriate weight, but it does not eliminate discovery that is closely tied to the claims and uniquely held by the recipient. The Pharmacists therefore must identify a concrete burden for the Court to weigh against PCMA's need for this targeted information. *See Nix*, 11 F. App'x at 500.

*First*, the issues at stake are important. This case concerns constitutional limits on state regulation of interstate commerce and federal preemption, and the Act may affect pharmacy businesses, employment, patient access, and the administration of prescription-drug benefits. *See* Compl. ¶¶ 5, 7. The Motion's characterization of the case as a straightforward legal challenge does not diminish the importance of the issues or the discovery bearing on the Act's anticipated operation.

*Second*, the Motion and declarations do not quantify the burden of responding to PCMA's subpoenas. They identify no estimate of document volume, collection time, review time, cost, or particular requests that would be especially difficult to search. *Cf. Fusion Elite All Stars*, 340 F.R.D. at 261 (movant must present specific evidence of burden, not mere assertions). The declarations describe anticipated chilling and possible business consequences, but they do not provide a concrete production estimate. Nor does the Motion explain why two pharmacists must search TPA's files or produce documents outside their own possession. The reference to TPA resources may bear on logistics, but PCMA does not rely on it as a substitute for a burden analysis. Moreover, the Pharmacists each admit that they have access to TPA's resources in responding to these subpoenas, further alleviating any burden. *See* Standefer Decl. ¶ 10; Honeycutt Decl. ¶ 9.

*Third*, PCMA needs the documents because the Pharmacists are private proponents of the Act with direct knowledge of what they communicated, reviewed, and understood about the law's design and anticipated effects. Public legislative materials and PCMA's own records may provide circumstantial evidence, but they cannot supply private communications with TPA, other advocates, and legislators or the proponents' contemporaneous factual assessments. The Motion says the legislative record is publicly available, but the legislators from whom we have sought documents have asserted legislative protections; that circumstance makes the sought-after evidence more important, not less.

*Finally*, the Motion's policy concerns do not justify a blanket quash. PCMA seeks the Pharmacists' own Act-related files, not TPA's membership roll or donor records. The subpoenas target two individuals and defined Act-related topics, and PCMA offered to discuss ways to reduce any burden that might actually be substantiated. If a particular request reaches genuinely sensitive strategy material, the Court can narrow that request, redact personal information, designate material confidential, enter a protective order, or allocate significant production expense if warranted. But the Motion's request to defer all production until resolution of a motion to dismiss and to impose attorneys'-eyes-only treatment for all internal materials is unsupported by a specific showing and is far broader than necessary. Targeted discovery of legislative and advocacy materials is not categorically improper in constitutional litigation. *See Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (en banc); *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 220–31 (4th Cir. 2016).

## III. The First Amendment does not bar production

The Pharmacists invoke *NAACP v. Alabama*, 357 U.S. 449 (1958)—which protected the anonymous membership lists of a minority-rights organization facing violent reprisals—to argue that the First Amendment protects the associational and petitioning activity of TPA, its members, and private pharmacists. But that does not extend to shield targeted document discovery in a

federal civil action challenging legislation that directly benefits the Pharmacists' economic interests.

As a starting point, the First Amendment issues cut both ways. PCMA's and its co-plaintiffs' theory is that state lawmakers and their aligned lobbyists and proxies propagated a pretextual explanation for the Act, in an attempt to conceal its true purpose of protecting local businesses from out-of-state competition. Those who willingly and openly participated in the execution of that strategy should not now be permitted to avoid inquiry into their true motives.

The Motion assumes that the First Amendment creates a blanket privilege to discovery. That is wrong. PCMA is not a government agency. The Sixth Circuit has held that *NAACP* does not apply to discovery by a private party when there is no risk of public disclosure due to a sufficient protective order. *See Marshall v. Bramer*, 828 F.2d 355, 360 (6th Cir. 1987) (distinguishing *NAACP* on the basis it concerned "government attempts at public disclosure of individual affiliation" not a private litigant). PCMA is willing to enter into a protective order. Thus, the foundation of the Pharmacists' First Amendment argument is baseless.

And even if *NAACP* could apply, the relevant question is whether the subpoenas served on the Pharmacists create an objectively reasonable probability of chilling protected activity, and if so whether PCMA's need for highly relevant, targeted discovery outweighs that burden. *See Marshall*, 828 F.2d at 358; *In re Motor Fuel Temperature Sales Practices Litigation*, 641 F.3d 470. The Pharmacists have made no such showing here. The subpoenas seek two individuals' own Act-related documents, not TPA membership lists or donor identities.

Honeycutt states that he has "serious reservations" about future participation in the political process, but identifies no threat, harassment, reprisal, membership withdrawal, or concrete consequence caused by these subpoenas. His advocacy in favor of the Act was public, including media interviews, social-media posts, and communications with legislators. Standefer describes a preexisting "fear of reprisal" and says he spoke in broad terms. But, like Honeycutt, he

does not identify a specific retaliation caused by the subpoenas or a concrete impairment of his association with TPA. Those concerns may support a request for targeted protection, but they do not establish a reasonable probability that production of Act-related documents will chill protected activity.

*Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021), does not suggest otherwise. *Bonta* involved a broad regulatory demand for donor identities and compelled public disclosure to a state agency. These subpoenas are targeted civil discovery from two private nonparties concerning a specific statute, defined participants, and defined topics. PCMA's need is substantial because the materials may bear directly on purpose, anticipated effect, and functional operation. The requests do not require public disclosure beyond this litigation. Any genuinely sensitive document can be addressed through a request-specific objection, redaction, confidentiality designation, or protective order.

The cases cited by the Pharmacists do not support a blanket quash. *In re Motor Fuel* and similar cases involving internal associational materials require an objective showing of likely chill and a careful balance; they do not make every document created during political advocacy immune from discovery. *Whole Woman's Health v. Smith*, 896 F.3d 362, 369–76 (5th Cir. 2018), involved broader internal communications of an association and extraordinary discovery circumstances. Here, the subpoenas target two individual business owners and a defined set of documents concerning the Act. Public advocacy does not eliminate all associational interests, but it weighs against treating these subpoenas as anonymous-membership or donor-disclosure demands.

Standefer's statement that he deliberately spoke only in broad terms because of a preexisting fear of reprisal does not show that enforcement of these subpoenas would cause an intolerable chill. Nor does Honeycutt's generalized concern that responding may affect future participation identify a particular request or document that creates a concrete risk. And a person who

voluntarily enters the public arena to advocate for legislation cannot claim that subsequent litigation discovery regarding that *same public advocacy* chills his speech. *Cf. Doe v. Reed*, 561 U.S. 186, 195–98 (2010) (signing a referendum petition is inherently public conduct; public advocacy does not implicate the same First Amendment concerns as anonymous membership). If a specific private strategy communication presents a legitimate associational concern, the proper remedy is a targeted objection and protective relief, not quashing all fourteen requests.

## IV. The Pharmacists' motion to quash is procedurally improper

Rule 45(d)(2)(B) requires a person commanded to produce documents to serve written objections on the requesting party "before the earlier of the time specified for compliance or 14 days after the subpoena is served." This requirement is not optional. It serves the critical function of enabling the requesting party to understand, on a category-by-category basis, what the recipient objects to and why—thereby facilitating negotiation and, if necessary, a focused motion to compel.

The Joint Statement confirms that Honeycutt and Standefer did not serve objections to any subpoena request. Jointly moving to quash after the meet-and-confer does not replace the request-specific notice Rule 45 requires. That notice enables the requesting party to narrow disputes and allows the Court to evaluate the actual objection rather than a generalized claim that all requests are irrelevant, burdensome, or protected.

The Motion and supporting declarations likewise do not identify a timely privilege claim or describe particular withheld documents as Rule 45(e)(2)(A) requires. Instead, the Motion asserts categorical First Amendment and legislative-privilege theories and generalized burden without identifying which PCMA request or document is allegedly protected. The Motion also includes arguments about TPA, its CEO, its lobbyist, and CVS's separate subpoenas; those arguments cannot establish a basis to quash PCMA's subpoenas to Honeycutt and Standefer.

## CONCLUSION

For the foregoing reasons, PCMA respectfully requests that the Court deny the Pharmacists' Motion to Quash, enforce PCMA's subpoenas, and order Honeycutt and Standefer to produce responsive, nonprivileged documents within fourteen days of the Court's order, subject to any reasonable request-specific narrowing, confidentiality protections, or other conditions the Court deems appropriate.

Dated: August 28, 2026

Respectfully submitted,

**WINSTON TAYLOR LLP**

By: */s/ Michael B. Kimberly*

Michael B. Kimberly (*pro hac vice*)
Linda M. Blair (*pro hac vice*)
WINSTON TAYLOR LLP
1901 L Street NW
Washington, DC 20036-3506
Telephone: (202) 282-5000
Facsimile: (202) 282-5100
Michael.Kimberly@winstontaylor.com
Linda.Blair@winstontaylor.com

Nathan R. Lee (*pro hac vice*)
WINSTON TAYLOR LLP
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Nathan.Lee@winstontaylor.com

Todd Presnell
Timothy A. Rodriguez
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
Telephone: (615) 252-2355
tpresnell@bradley.com
trodriguez@bradley.com

*Attorneys for Plaintiff Pharmaceutical Care Management Association*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day August 28, 2026, I served a true and correct copy of the foregoing instrument on Defendants' attorneys of record via the Court's CM/ECF filing system and on Honeycutt and Standefer's counsel, Rebecca W. Demaree and Blakely D. Matthews, via email.

*/s/ Michael B. Kimberly*
Michael B. Kimberly