**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **EXPRESS SCRIPTS, *et.al.,*** | |
| ***Plaintiffs*,** | |
| **- v. -** | **Master Case No.: 3:26-cv-685** |
| **TENNESSEE BOARD OF PHARMACY, *et al.*,** | **Consolidated with Case Nos.:** |
| ***Defendants*.** | **3:26-cv-806** |
| | **3:26-cv-816** |
| | **3:26-cv-818** |
| | **JUDGE RICHARDSON** |
| | **MAGISTRATE JUDGE FRENSLEY** |

# JOINT MOTION AND MEMORANDUM OF LAW TO QUASH SUBPOENAS ISSUED TO NON-PARTIES MOLLIE HOSKINS SCARBROUGH (HOSKINS DRUG STORE 2) AND PREMIER PHARMACY (BETH INGRAM)


Blakeley D. Matthews
Rebecca W. Demaree
CORNELIUS & COLLINS, LLP
211 Athens Way, Suite 200
Nashville, TN 37228
615-244-1440
bdmatthews@cclawtn.com
rwdemaree@cclawtn.com

*Counsel for Non-Party Movants*

## STATEMENT OF COMPLIANCE WITH LOCAL RULES 7.01 AND 37.01

Non-parties Mollie Hoskins Scarbrough, pharmacist and co-owner of Hoskins Drug Store #2 located in Clinton, TN and Elizabeth "Beth" Ingram, Owner and Officer of Premier Pharmacy, Inc. in Kingsport, TN (collectively, "Non-Party Movants"), respectfully move the Court, pursuant to Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure, to quash subpoenas duces tecum served upon them by Plaintiffs Express Scripts, and their affiliated companies: their pharmacies, PBM, and health insurance issuer, Cigna Healthcare. The Express Scripts plaintiffs are all co-owned through common holding company, The Cigna Group. (hereinafter collectively "ESI"), ESI Compl. D.E. 1 ¶ 47.

Consistent with Local Rules 7.01(a)(1) and 37.01(b), the Non-Party Movants, and ESI hereby provide this Joint Statement of Counsel related to their efforts to resolve the dispute among them:

**(1)** **ATTEMPTS TO RESOLVE THE DISPUTE:** Counsel for the Non-Party Movants reached out to counsel for ESI shortly after being retained to represent the Non-Party Movants in responding to the subpoenas. On September 11, 2026, counsel for the Non-Party Movants and ESI met to discuss the Non-Party Movants' concerns about the scope of the information demanded by the subpoenas. Counsel were unable to reach a resolution because they have diametrically opposed views about the relevancy and appropriateness of the information demanded by the subpoenas.

**(2)** **THE DISCOVERY IN DISPUTE:** The third-party subpoenas served upon the Non-Party Movants are appended to this Combined Motion and Memorandum as Exhibits A and B.

**(3)** **THE PARTIES' RESPECTIVE POSITIONS:**

**A.** **MOVANTS' POSITION:** Through their lawsuit, the ESI Plaintiffs have raised pre-enforcement challenges to the constitutionality of a Tennessee law—challenges that turn on the text of the Tennessee law, its potential effects on interstate commerce, and Federal Pre-emption citing TRICARE, Medicare Pt. D and ERISA statutes. Nevertheless, ESI, following the same push for non-party discovery as CVS and PCMA, other plaintiffs in this consolidated lawsuit, have served sweeping subpoenas on these non-parties, demanding documents and information related largely to their efforts to petition the Tennessee General Assembly and the Governor to enact the challenged law. The discovery that ESI

seeks, like that sought by PCMA and CVS, is irrelevant to their claims, and even if it is deemed to have some marginal relevance, it does not survive balancing under either Rule 45(d) or the First Amendment. ESI cannot show any compelling need for the information they have demanded, and the lack of relevance raises the specter that the subpoenas were served for impermissible reasons—to retaliate against the Non-Party Movants for advocating for the enactment of the law and to chill others from advocating for the enactment of similar laws across the country. The subpoenas should be quashed for the reasons previously briefed by counsel on behalf of other subpoenaed non-parties in D.E. 73.

**B.** **ESI's Position:** The information ESI seeks is relevant to the central issues in this case. ESI has alleged that the purpose and effect of Tennessee Senate Bill 2040 are to discriminate against interstate commerce by protecting pharmacies domiciled in Tennessee from out-of-state competition. Movants are two of the Tennessee pharmacies the Act protects from out-of-state competition. They are also closely affiliated with the Act's lead legislative sponsors: One is managed by a sponsor, and the other is owned by a sponsor's family. Movants are therefore likely to have communications and documents concerning the Act's purpose and effect of favoring in-state economic interests by discriminating against out-of-state pharmacies. These include the communications and documents sought by the challenged subpoenas, for example: the Movants' communications with legislators about the Act and the pharmacies it will affect; communications with other pharmacies about the Act; communications with organizations that lobbied for the Act; and documents concerning the Act's purported justifications and proper scope.

Movants cannot meet their burden to quash the subpoenas. As explained, ESI's document requests are not "sweeping" but are instead targeted to obtain relevant information. Movants' principal argument—that the requests are irrelevant to the legislative purpose inquiry under the dormant Commerce Clause—contradicts Sixth Circuit precedent and has been rejected by other courts. The requests are also relevant to the Act's effects, both because of Movants' position as independent Tennessee pharmacies and their affiliations with the Act's sponsors. Movants' backup argument, that the subpoenas are overly burdensome, rests on generalized burden claims that are insufficient to overcome ESI's need for the documents. Movants' counsel represented during the parties' meet-and-confer that Movants likely have responsive documents. But Movants have not identified any specific concerns about the cost, volume, or difficulty of producing them. Nor did Movants file any responses or objections or seek any extension of the production deadline. Movants simply refused to produce any documents. ESI's need for the documents and its good-faith engagement with Movants refute any suggestion that ESI seeks these documents to chill protected speech or retaliate against the Act's proponents.

## TABLE OF CONTENTS

Statement of Compliance with Local Rules 7.01 and 37.01 .......... i

Table of Contents .......... iii

Introduction .......... 1

Argument .......... 4

A. ESI's subpoenas to Scarbrough and Premier Pharmacy on their face appear to be an end run around the Legislative Privilege arguments raised by Non-Party Legislators .......... 5

B. The Legislative Privilege Argument raised by the Non-Party Legislators is equally applicable to these non- parties .......... 7

C. The Procedural posture of the Consolidated Litigation is in flux and highlights the unnecessary burden on the Movants by these non-party subpoenas .......... 8

Conclusion .......... 9

Certificate of Service .......... 11

## INTRODUCTION

Non-parties Mollie Hoskins Scarbrough, member of the Tennessee Pharmacists Association ("TPA"), pharmacist, and the co-Owner of Hoskins Drug #2 and Elizabeth ("Beth") Ingram, Owner and Officer of Premier Pharmacy, Inc (collectively, "Non-Party Movants"), respectfully move the Court, pursuant to Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure, to quash the subpoenas duces tecum served upon them by Plaintiffs Express Scripts (ESI) and its jointly owned and affiliated pharmacies, PBM, and health insurance issuer. (Exhibits A,B).

Through these consolidated cases, Plaintiffs—the three largest pharmacy benefit managers ("PBMs") and their trade association—have brought pre-enforcement actions seeking to enjoin the eventual enforcement of Tennessee's Freedom, Access, and Integrity in Registered Pharmacy ("FAIR Rx") Act. That law would eliminate an inherent conflict of interest: Vertically integrated PBMs and insurers control pharmacy reimbursements, and they have used that control to steer patients to their own affiliated pharmacies while reimbursing those pharmacies at supra-competitive prices. That conflict has increased costs for health plans and patients and strangled the ability of independent pharmacies to compete on a level playing field, resulting in massive pharmacy closures and inhibited access to a critical component of the health system. For example, the Federal Trade Commission found that PBMs have paid their own affiliated pharmacies 1,000 percent above their acquisition costs on certain drugs while reimbursing independent pharmacies at (or even below) their acquisition costs. No wonder the Tennessee legislature enacted FAIR Rx Act to eradicate this conflict.

Not confining their dispute to the State officials ultimately charged with enforcing the FAIR Rx Act, ESI as well as PCMA and CVS and United, have now served sweeping subpoenas on several Non-Parties including, most recently, non-party Movants Scarbrough and Ingram and

their respective pharmacies, directing them to produce more than a dozen categories of documents reflecting their efforts to advocate for, organize around, and petition the Tennessee General Assembly to enact the FAIR Rx Act, including all communications with members of the Tennessee General Assembly, political contributions, presentations, polling, public-action alerts, internal assessments, and other associational activities. Every one of these categories is protected by the First Amendment's guarantees of freedom of association and to petition the government to redress grievances.

The Court should quash the subpoenas for at least two independent reasons:

*First*, the subpoenas demand the production of irrelevant information: A law is measured by its text, not what might reside in the hearts and minds of the individual legislators who voted for its passage. For that reason, the Sixth Circuit recently reaffirmed that, even under the dormant "Commerce Clause's antidiscrimination principle," an assessment of the *motivations* of individual legislators "is irrelevant" to whether a statute is, in fact, discriminatory. *Energy Mich. v. Mich. Pub. Serv. Comm'n*, 126 F.4th 476, 491 (6th Cir. 2025). That makes sense. In adjudicating constitutional questions, "what is relevant is the legislative purpose of *the statute*," not the "*motives* of the legislators who enacted the law." *Bd. of Educ. of Westside Cmty. Sch. v. Mergens By & Through Mergens*, 496 U.S. 226, 249 (1990) (plurality op.) (emphasis added); *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) ("[I]t is simply not consonant with our scheme of government for a court to inquire into the motives of legislators." (cleaned up)); *Bailey v. Callaghan*, 715 F.3d 956, 960 (6th Cir. 2013) ("It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." (quoting *United States v. O'Brien*, 391 U.S. 367, 383 (1968)). And yet, ESI seeks to probe the motivations of individual legislators based on communications they might have had with

individual pharmacists, their businesses and employees whether or not they actively advocated for passage of the Fair RX Act, along with the pharmacist and business owner's communications with their spouse and employee, wholly unrelated and irrelevant to the passage of that legislation. That type of information is irrelevant twice over.

*Second*, even if some of the information sought could be said to have some marginal relevance, ESI, like CVS, PCMA and United, is not entitled to the extraordinary breadth of documents and communications these subpoenas demand. The requests are wildly disproportionate to the claims they are pursuing, and it would set a dangerous precedent to sanction sweeping non-party discovery in furtherance of Plaintiffs' quintessential *legal* challenges to the constitutionality of the FAIR Rx Act. That concern is particularly acute because compelled production here impinges on the Non-Party Movants' core associational and First Amendment rights, and ESI cannot demonstrate the "compelling need" required to override the Non-Party Movants' constitutional privilege. Courts time and again have quashed similar subpoenas for fear of "chill[ing] a willingness [on the part of citizens from] participat[ing] in the political process, caus[ing] a fear of retaliation, and chill[ing] the free flowing of information." *All. of Auto. Mfrs., Inc. v. Jones*, No. 4:08-cv-555, 2013 WL 4838764, at *4 (N.D. Fla. Sept. 11, 2013); *accord Ass'n of Equip. Mfrs. v. Burgum*, 427 F. Supp. 3d 1082 (D.N.D. 2019) (quashing third-party subpoena directed at a trade association that had drafted and lobbied for a challenged law, finding the materials "lie at the core of" the First Amendment and were irrelevant to the constitutional merits). And to the extent that the motivations of individual legislators are relevant, there is already a publicly available source for that information—the legislative file maintained by the Tennessee General Assembly which ESI has already accessed and cited in its Complaint, D.E. 1, PP. 108,112-113.

Indeed, because the information sought here is of such dubious value, it gives rise to a strong inference that the subpoenas were issued instead for improper purposes: to retaliate against independent pharmacies advocating for the passage of Tennessee's law and to intimidate others from advocating for the passage of similar laws across the country. And, especially egregious with these 2 subpoenas issued by ESI, targeting 2 Independent Pharmacies because of their business and, in the case of Scarbrough, marital, association with legislators who supported the passage of the Act. The message sent here is clear: If you advocate for the passage of this type of legislation, then you *and your spouses, associates and employers*, better be prepared to spend tens of thousands of dollars responding to baseless subpoenas.

The subpoenas must be quashed. They seek irrelevant documents, are disproportionate and burdensome, and Plaintiffs cannot show a substantial need sufficient to compel the Non-Party Movants to disclose—and thereby potentially chill and retaliate against—core First Amendment activities.

**ARGUMENT**

In support of their Motion, non-parties Scarbrough and Ingram rely on the Memorandum filed by TPA, Pudlo, Johnson, Honeycutt and Standefer, D.E. 73, rather than repeating the same

arguments to the Court and in the interests of judicial economy. Movants also rely on their Declarations filed in support of this Motion, Ex. C and D.

Unique to the subpoenas served on them by ESI, Movants make the following additional arguments.

### A. ESI's subpoenas to Scarbrough and Premier Pharmacy on their face appear to be an attempted end run around the Legislative Privilege arguments raised by non-party legislators.

Mollie Hoskins Scarbrough, in addition to being a pharmacist and non-party to this consolidated litigation, is also the spouse of Representative Richard ("Rick") Scarbrough. Ex. C. Beth Ingram is the Owner and Director of Premier Pharmacy which employs Senator Robert ("Bobby") Harshbarger. Ex. D.

PCBA, a co-plaintiff in this consolidated litigation, previously served subpoenas on 6 non-party legislators, including Rep. Scarbrough and Sen. Harshbarger, requesting:

> "1. All Communications and Documents related to drafts of bills (including HB1959 and SB2040) concerning the Act and all drafts of amendments to bills concerning the Act.
>
> 2. All Communications and Documents with other employees of the government of Tennessee or lawmakers related to the Act, including Communications and Documents with other lawmakers regarding any bills or amendments resulting in the Act (including HB1959 and SB2040).
>
> 3. All Communications and Documents related to notes and analyses of the Act, including notes and analysis of the bills and amendments resulting in the Act (including HB1959 and SB2040).
>
> 4. All Documents and Communications concerning Arkansas Act 624, the litigation captioned *Express Scripts, Inc. v. Richmond*, or modeling, aligning, or comparing the Act to the law of any other state, including any analysis of how to draft the Act to avoid the outcome in that litigation.
>
> 5. All Documents and Communications related to the Act's potential impact on pharmacies in Tennessee, including, but not limited to, potential closures, layoffs, or increased business."

Motion to Compel, D.E. 79, P. Id. 1830-1831.

PCMA also noted that the subpoenas served on those non-party legislators targeted "the individuals principally responsible for introducing, sponsoring, and promoting the Act." Motion to Compel, D.E. 79, P.Id. 1830. Notably, this included, "Representative Scarbrough…the lead House sponsor. His spouse co-owns a local independent drug store" and "Senator Harshbarger (who) introduced the Act as Senate Bill 2040 and was its author and chief proponent…He also manages his family's independent pharmacy, Premier Pharmacy, in Tennessee." Id. at P.Id 1831. Contrary to PCMA's assertion, Sen. Harshbarger does not own or manage Premier Pharmacy, he is solely an employee. Decl. Ingram, Ex. D. This assertion is also made in ESI's Complaint, D.E. 1, ¶ 110.

There are no assertions in ESI's Complaint that Mollie Scarbrough or Beth Ingram, or their businesses, had any advocacy role in the passage of the Act. The logical inference follows that the subpoenas issued to these 2 non-party Movants targeted them because of their association with 2 sitting legislators who, while performing their elected responsibilities, supported an Act that apparently disrupts the Plaintiffs' business models. Plaintiffs' reason for issuing subpoenas to these non-parties is contradicted by PCMA's own Motion to Compel filed against the non-party legislators (including Scarbrough and Harshbarger):

> "***b. No other evidence would be as probative as the evidence sought.*** Although PCMA and its co-plaintiffs will rely on various sources of evidence to prove up their claims, we are not presently aware of any other source of documents or communications directly demonstrating the considerations the Legislators took into account when drafting and advancing the Act. Public sources do not suffice. After all, "officials seldom, if ever, announce that they are pursuing a course of action because of an insidious discriminatory intent." *Hargett*, 123 F. Supp. 3d at 970.

**Only the Legislators possess documents showing directly the considerations that motivated their drafting and adopting of the Act."**

Motion to Compel, D.E. 73, P. Id. 1838-1839 (emphasis added).

Tellingly, faced with the legislators' response to the Motion to Compel citing legislative privilege, the consolidated plaintiffs are now issuing subpoenas to the legislators' businesses. See generally, D.E. 87. In addition to the 2 subpoenas at issue in this Motion, a subpoena was also served on Twelve Stone Health Partners, Inc, a business founded by Sen. Shane Reeves who currently serves as its CEO. See, www.12stonehealth.com and Exhibit E. The subpoena issued by ESI to Sen. Reeves' business seeks the same information as those issued to Scarbrough and Premier Pharmacy and is further evidence that the information sought from these 3 non-parties is an end run around legislative privilege. This is equally precluded as noted by the non-party legislators in their Response to the Motion to Compel:

> In other words, if immunity precludes PCMA from suing the Legislators for passing the Act, it shouldn't be allowed to drag them into the litigation at all for the same reasons. See Russell v. Jones, 49 F.4th 507, 515 (5th Cir. 2022) ("Plaintiffs may not obtain by third- party subpoena what they could not obtain from the [officials] as defendants.").

Response, D.E. 87, P.Id. 2035.

Targeting these 3 businesses is punitive and may well have a chilling effect on Tennessee's elected officials and citizens who observe the actions taken against these non-parties and choose not to involve themselves in elected office or citizen advocacy in the future. See, Ex. C,D.

**B. The Legislative Privilege Argument raised by the Non-Party Legislators is equally applicable to these third parties.**

In their Response in Opposition to PCMA's Motion to Compel, the non-party legislators highlight that:

> "The Legislators' communications about the Fair Rx Act's legislative process are covered by legislative privilege. Recent judicial consensus confirms that the

> legislative privilege includes communications not only within the legislature, but also by or with "persons outside the legislature—such as executive officers, partisans, political interest groups, or constituents." *Hughes*, 68 F.4th at 236 (citation omitted). This coverage of third-party communications is not limited to those persons "acting as the [l]egislators' agents." *Smith*, 3 N.W.3d at 535-36 (adopting the "reasoning of the federal courts"). The privilege extends to "unsolicited" communications or acts by a third party, regardless of its identity. *Id*. That is for good reason. "Meeting with 'interest' groups" and other external third parties "is a part and parcel of the modern legislative procedures through which legislators receive information possibly bearing on the legislation they are to consider." *Hughes*, 68 F.4th at 236 (citation omitted). So, an exemption that fails to protect such communications would "swallow the [privilege] almost whole." *Id*. Properly understood, it is the "subject of the communication" that "provides the limiting principle" for applying legislative privilege. In sum, if a communication to a legislator is about the legislative process, it is privileged—even if "unsolicited." *Id*. "

Response, D.E. 87, P. Id. 2042 -2043, citing *La Union Del Pueblo Entero v. Abbott* ("Hughs") 68 F. 4th 228 (5th Cir 2023) and *Smith v. Iowa Dist Ct. for Polk Cnty,* 3 NW 3d 524 (Iowa 2024).

These Movants adopt this reasoning. Indeed, even if they had actively participated in advocating for passage of the Act, constituent dialogue on the legislative process is not part of legislative history. Legislative history and committee hearings may be relevant and are equally available to the Plaintiffs and even cited by ESI in their Complaint. See ESI Compl. D.E. 1 ¶¶ 108-112, 115,116.

**C. The Procedural posture of the Consolidated Litigation is in Flux and highlights the unnecessary burden placed on the Movants through these non-party subpoenas.**

As of September 16, 2026, there have not yet been Answers filed nor has the Initial Case Management Conference been held (although it appears as if the parties themselves agreed to an ICMO, D.E. 74). There have been, to date, 3 Motions objecting to the non-party subpoenas on behalf of 11 non-parties and the TN Board of Pharmacy, D.E. 73, 87, 88. These Motions objecting to the Non-Party Subpoenas have been fully briefed and are awaiting ruling by the Court. Pending ruling on these Motions, Plaintiffs have continued to serve subpoenas on non-parties including the

Movants herein, TwelveStone Health Partners, (Exhibit E), and, upon information and belief, 4 additional non-parties (issued on behalf of Plaintiffs United Health) bringing the total number of non-party subpoenas to 18 and counting. It is difficult to get an accurate count other than by word of mouth among non-parties as the subpoenas are self-issued and have not been filed with the court.

Additionally, there is a pending Motion to Dismiss that will be fully briefed as of October 2, 2026. Motion to Dismiss D.E. 76, Response to Motion to Dismiss, D.E. 90. Despite these pending Motions, the Plaintiffs are continuing to serve subpoenas on non-parties seeking the same information. See Ex A,B,E and D.E. 73 and attached subpoenas. In the interests of judicial economy and to relieve the burdens, financial and operational, on additional non-parties who are, or may be, subject to the Plaintiffs' subpoenas, these Movants urge the Court to stay further non-party subpoenas seeking the same information until the Court has provided direction through rulings on the pending Motions. Indeed, prior to filing this Motion, these Movants requested that ESI delay requiring a response to the subpoenas at issue in this Motion until the court had ruled on pending motions, and that request was rejected. Email between Counsel for Movants and counsel for ESI attached as Exhibit F. This position by ESI reconfirms the apparent goal of Plaintiffs to intimidate and cause unnecessary expense to non-parties in connection with legislation that is not scheduled to go into effect for over a year and a half.

## CONCLUSION

The Court should grant Non-Party Movants' Motion and quash the subpoenas. In the alternative, the Court should substantially modify the subpoenas by eliminating irrelevant requests and categories of materials; substantially narrowing them to requests for which the Plaintiffs can demonstrate "need" sufficient to overcome the inherent undue burden and First Amendment

privilege that the requests would impose on Non-Party Movants; and enter a protective order deferring compliance until resolution of the pending Motion to Dismiss.

Dated: September 17, 2026

Respectfully submitted,

/s/ Rebecca W. Demaree

Blakeley D. Matthews
Rebecca W. Demaree
CORNELIUS & COLLINS, LLP
211 Athens Way, Suite 200
Nashville, TN 37228
615-244-1440
bdmatthews@cclawtn.com
rwdemaree@cclawtn.com

*Counsel for Non-Party Movants*

**CERTIFICATE OF SERVICE**

I do hereby certify that a true and correct copy of the foregoing document and exhibits has been filed via the Court's CM/ECF system, electronic transmission and/or US Mail, postage prepaid, this 17th day of September, to the following:

Edward H. Trent (#30045)
Gene C. Schaerr
Joshua J. Prince
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, DC 20006
etrent@schaerr-jaffe.com
gschaerr@schaerr-jaffe.com
jprince@schaerr-jaffe.com

Jing Geng
Michael Wennerlund (31332)
Tyler S. Sanders
Office of the Tennessee Attorney General
Financial Division
P.O. Box 20207
Nashville, TN 37202-0207
Michael.wennerlund@ag.tn.gov
Tyler.sanders@ag.tn.gov

Blake M. Morain
G. Brian Jackson
Butler Snow LLP (Nashville Office)
Neuhoff Building
1320 Adams Street
Suite 1400
Nashville, TN 37208
615-651-6631
Blake.Morain@butlersnow.com
brian.jackson@butlersnow.com

Cory J. Kopicki
David Costigan
Michael McGinley
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-2082
David.costigan@dechert.com
cory.kopicki@dechert.com
michael.mcginley@dechert.com

Rani A. Habash
Steven A. Engel
Wilfred Beaye, Jr.
Dechert LLP (DC Office)
1900 K Street, NW
Washington, DC 20006-1110
Rani.Habash@dechert.com
steven.engel@dechert.com
wilfred.beaye@dechert.com

Daniel S. Volchok
Jane E. Kessner
Jennifer Milici
Kevin Matthew Lamb
Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
volchok@wilmerhale.com
jane.kessner@wilmerhale.com
Jennifer.Milici@wilmerhale.com
kevin.lamb@wilmerhale.com

L. Webb Campbell, II
William J. Harbison, II
William L. Harbison
Sherrard Roe Voigt & Harbison, PLC
1600 West End Avenue, Suite 1750
Nashville, TN 37203
wcampbell@srvhlaw.com
jharbison@srvhlaw.com
bharbison@srvhlaw.com

E. Todd Presnell
Tim Rodriquez
Bradley Arant Boult Cummings LLP
(Nashville, TN Office)
1221 Broadway, Suite 2400
Nashville, TN 37203
tpresnell@bradley.com
trodriquez@bradley.com

Linda M. Blair
Michael B. Kimberly
Winston Taylor
1901 L Street, NW
Washington, DC 20036
linda.blair@winstontaylor.com
michael.kimberly@winstontaylor.com

Nathan Lee
Winston Taylor
2121 N. Pearl Street
Dallas, TX 75201
nathan.lee@winstontaylor.com

s/ Rebecca W. Demaree
Rebecca Wells Demaree