**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| | **Master Case No. 3:26-cv-00685** |
| **IN RE: TENNESSEE SENATE BILL 2040** | **Consolidated with Case Nos:**<br>**3:26-cv-00806**<br>**3:26-cv-00816**<br>**3:26-cv-00818** |
| | **JUDGE RICHARDSON**<br>**MAGISTRATE JUDGE FRENSLEY** |

---

**NON-PARTY RXPREFERRED BENEFITS, LLC'S MOTION TO QUASH SUBPOENA DUCES TECUM, PARTIALLY, AND SUBPOENA TO TESTIFY AT A DEPOSITION AND/OR MOTION FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM IN SUPPORT**

---

## STATEMENT OF COMPLIANCE WITH LOCAL RULES 7.01 AND 37.01

Non-party RxPreferred Benefits, LLC ("RxPreferred") respectfully moves the Court, pursuant to Rules 26(b), 26(c), and 45(d)(3) of the Federal Rules of Civil Procedure, to quash, in part, the subpoena duces tecum ("Document Subpoena") and to quash the subpoena to testify at a Rule 30(b)(6) deposition ("Deposition Subpoena") served upon it by Plaintiffs CVS Pharmacy, Inc., Caremark Rx, L.L.C., and their affiliated pharmacy entities, together with SilverScript Insurance Company and Coventry Health and Life Insurance Company (collectively, "CVS"), or, alternatively, for a protective order. RxPreferred respectfully requests a telephonic discovery conference with the Magistrate Judge in connection with this motion and, because the Deposition Subpoena commands testimony on November 4, 2026, requests that the deposition not proceed pending resolution of this dispute. Consistent with Local Rules 7.01(a)(1) and 37.01(b) and Section G of the Initial Case Management Order, RxPreferred and CVS hereby provide this Joint Statement of Counsel related to their efforts to resolve the dispute between them:

(1) **Attempts to Resolve the Dispute**: RxPreferred and CVS have worked for more than three months to narrow this dispute. RxPreferred served its Responses and Objections and produced documents Bates-labeled RxPreferred_0000001 through RxPreferred_0000219 on August 28, 2026. CVS sent a deficiency letter on September 10, 2026, and counsel met and conferred on September 22, 2026. Counsel then exchanged correspondence on September 29 and October 1, 2, 9, 19, 20, 21, and 26, and November 2, 2026. In those exchanges, RxPreferred disclosed its custodians and search methodology, agreed to run CVS's proposed search terms across the files of three custodians for the period CVS selected, agreed, at CVS's suggestion, to engage an IT professional, confirmed through custodian interviews that no responsive text messages exist, provided search-term hit reports, and, as a compromise on the requests seeking information on RxPreferred's ownership and control, provided the sworn Declaration of its President and Chief Executive Officer, Jeff Malone. CVS rejected the Declaration as a substitute for ownership records or a deposition and, instead, demanded seven categories of ownership, governance, and financial records. In the meantime, CVS issued a Deposition Subpoena on October 20, 2026 to RxPreferred with seventeen topics that largely overlap with the Document Subpoena. The parties continue to confer regarding CVS's revised search terms for RxPreferred's

communications concerning the Act, and RxPreferred reserves the right to seek relief if that process fails, but counsel has been unable to resolve the disputes presented here. The parties have made a good-faith effort to resolve each dispute presented in this statement, as required by Section G of the Initial Case Management Order and Local Rule 37.01(a).

(2) **The Discovery in Dispute**: The discovery in dispute, at this stage, consists of (a) Request Nos. 12 through 17 of the Document Subpoena, which seek RxPreferred's board, officer, ownership, affiliation, financial-relationship, network, and reimbursement records, together with the seven categories of ownership records CVS demanded on October 26, 2026; and (b) all seventeen topics of the Deposition Subpoena. The Document Subpoena, the Deposition Subpoena, RxPreferred's Responses and Objections, CVS's September 10, 2026 letter, and the parties' email correspondence are appended to this Motion and Memorandum as Exhibits A, B, C, D, and E, respectively.

(3) **The Parties' Respective Positions**:

a. The Movant's Position: RxPreferred contends that the ownership, governance, and commercial records CVS seeks, and the seventeen deposition topics CVS has noticed, are irrelevant to CVS's claims because they rest on the inaccurate premise that SB 2040 as introduced would have reached RxPreferred and that subsequent amendments created a "carve out" to protect RxPreferred as the only "in-state" pharmacy benefits manager ("PBM"). As introduced, SB 2040 prohibited a pharmacy benefits manager from holding an ownership or beneficial interest in, or exercising control over, a Tennessee pharmacy license or license holder; it did not reach the owners of a PBM, and RxPreferred held no such interest. Nor would the bill as amended have reached RxPreferred or any entity that owns or controls RxPreferred. Every amended version, including the Senate committee amendment that used the term "covered entity," reached only a person or entity that, at the same time, owned, operated, or controlled some part of a Tennessee-licensed pharmacy, some part of a "covered entity" or "health insurance issuer," and some part of a PBM. RxPreferred owns no pharmacy, and no person or entity who owns, operates, controls, or directs the operation of RxPreferred holds that combination of interests; no person exercising managerial control in RxPreferred holds any interest in a Tennessee pharmacy license. As enacted, the FAIR Rx Act reaches only a person or entity holding more than five percent of a pharmacy, a PBM, and a health insurance issuer, and RxPreferred owns neither a pharmacy nor a health insurer. The Declarations of Jeff Malone confirm these facts under penalty of perjury. The discovery sought also seeks highly confidential commercial information from a non-party competitor without substantial need, exposes RxPreferred's board

members and equity holders, including individual pharmacists who have or may seek business relationships with CVS, to a risk of commercial retaliation, and imposes an undue and disproportionate burden on a non-party. Fed. R. Civ. P. 26(b)(1), 26(c), 45(d)(3). RxPreferred further contends that the deposition would be cumulative of its production and the Malone Declarations, and that the topics on ownership, governance, and commercial matters are objectionable for the same reasons as the corresponding document requests.

b. CVS's Position: The CVS Plaintiffs ("CVS") seek to obtain documents and testimony from RxPreferred Benefits, Inc. ("RxPreferred"), a pharmacy benefits manager ("PBM") based in Mount Juliet, Tennessee. CVS brought this action to challenge the FAIR Rx Act (the "Act"), a Tennessee law that CVS believes was unconstitutionally drawn to protect RxPreferred and the in-state Tennessee pharmacies with whom it is affiliated. CVS Compl. ¶¶ 8, 156-63. RxPreferred denies these allegations, yet it has refused to produce any documents reflecting its board of directors, its equity owners, and its management team, even subject to an attorneys-eyes-only protective order. RxPreferred offers no valid privilege or other reason for depriving CVS of the discovery necessary to test its claims.

In support of its dormant Commerce Clause challenge, CVS seeks to obtain evidence showing that "local economic actors are favored" by the terms of the Act. *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 433 (6th Cir. 2008). As introduced, the Act prohibited only PBM-pharmacy affiliation. It then went through a series of amendments. The first Senate Amendment prohibited any "person or entity" from directly or indirectly owning a pharmacy, a PBM, or a covered entity, "regardless of the percentage of ownership interest held by a person, entity, or affiliate." *See* SA0533, available at https://capitol.tn.gov/Bills/114/Amend/SA0533.pdf. That version of the bill would have swept in any person owning equity in all three types of entities. But the enacted version of the law narrowed the scope to target only the national healthcare companies—it now prohibits any person from owning or operating a pharmacy, a PBM, and a "health insurance issuer," provided that the ownership held by that person or entity is greater than five percent. *See* Tenn. Code Ann. § 63-10-3[]. Without the inclusion of the five percent ownership requirement or the health insurance issuer language, Plaintiffs believe that RxPreferred or some of its owners would have been covered by an earlier version of the Act.

Prior to this litigation, RxPreferred was very clear about its connection with independent pharmacies. According to its CEO, the PBM is "solely owned and operated by independent pharmacies," and it lets "independent pharmacy

owners . . . purchase stock in [its] organization and have a vested interest moving forward." *See* Interview with Jeff Malone, The Honest Apothecary, https://rxpreferred.com/honest-apothecary-interview-jeff-malone. Therefore, CVS alleges that RxPreferred is a Tennessee-based PBM, affiliated with in-state pharmacies, and that the Tennessee legislature drafted the bill in a way that specifically protected RxPreferred and its owners. If so, this would be strong evidence of the discriminatory purpose underlying the Act.

On July 17, 2026, Plaintiffs served a document subpoena on RxPreferred seeking information related to its involvement in the Act's revisions and for basic corporate information—such as the identity of its officers, directors, and equity holders. Despite the ease of providing such ordinary course corporate information, RxPreferred refused to provide it.

On August 14, 2026, weeks after the 14-day deadline for serving objections, RxPreferred produced a few emails involving the Act, asserted general objections, and refused to produce whole categories of information. Yet even that thin production showed that RxPreferred was directly involved in the adoption and amendments to the Act. The company traded drafts of the legislation with the Tennessee Pharmacists Association (the "TPA"), weighed in on how certain language should be written, and testified in favor of the bill. *See* RxPreferred_0000066, 0000069-80, 0000106, 0000152-53, 0000168-71, 0000210.

Over the past several weeks, the parties have met and conferred in an effort to negotiate an acceptable production that would enable RxPreferred to meet its discovery obligations. CVS offered revised search terms, which resulted in approximately 17,000 hits, inclusive of duplicates. CVS offered to narrow the search terms and again asked RxPreferred to produce—on an attorneys-eyes-only basis under a protective order—capitalization tables and a list of its board members, directors, and officers.

The deadline for discovery motions is November 9, 2026, with fact discovery closing on November 19, 2026. *See* Dkt. 68. CVS noticed a 30(b)(6) deposition for November 4, 2026, to preserve its ability to obtain testimony from RxPreferred following its document production.

On November 2, 2026, RxPreferred again refused to provide the basic corporate information, instead claiming that Plaintiffs should accept a declaration in place of it. Yet RxPreferred's declaration appears to have been carefully drafted to cover only persons "exercising managerial control" over the company and their Tennessee licenses; for instance, it specifically did not say whether any equity

holder of RxPreferred, directly or indirectly, owned any part of a Tennessee pharmacy. It therefore does not answer the question of whether any of RxPreferred's equity owners may have been swept in by a prior version of the Act. In any event, CVS is entitled to documentary discovery into these subjects. RxPreferred cannot avoid its discovery obligations through a carefully lawyered declaration.

RxPreferred also has asserted that the identity of those who own or control RxPreferred has no relevance to Plaintiffs' claims. But "[t]he standard for relevance is capacious," *Huang v. Ohio State Univ.*, 116 F. 4th 541, 564 (6th Cir. 2024), "extremely broad," *Abundes v. Athens Food Servs., LLC*, 2015 WL 13664280, at *2 (M.D. Tenn. Sept. 18, 2015), and "more liberal than the trial setting," *id.* It must be "broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* "[G]enerally, a request for discovery should be considered to be seeking relevant information if there is *any* possibility that the information sought may be relevant to the claim or defense of any party in the action." *Liebman v. Methodist Le Bonheur Healthcare*, 2020 WL 12895960 at *3 (M.D. Tenn. Nov. 4, 2020) (quotation marks omitted).

The "discovery sought" here is "relevant on its face," and RxPreferred has not carried its "burden to establish the lack of relevance." *In re: Subpoena Duces Tecum of Prochimie Int'l, Inc.*, 2016 WL 7223340, at *3 (E.D. Tenn. Dec. 13, 2016) (quotation marks omitted). RxPreferred appears to be the only Tennessee-based PBM in the State. By its own admission, it was "founded by independent pharmacy owners and pharmacists." RxPreferred_0000210. And it is "solely owned and operated by independent pharmacies," and it lets "independent pharmacy owners . . . purchase stock in [its] organization and have a vested interest moving forward." *See* Interview with Jeff Malone, CEO, The Honest Apothecary, https://rxpreferred.com/honest-apothecary-interview-jeff-malone.

CVS has alleged that the Act was designed to carve out in-state interests, such as RxPreferred and its in-state pharmacy owners, and to insulate them from competition. Further, if RxPreferred's directors, managers, and equity holders are affiliated with or own pharmacies, then the company would present the same purported conflict of interests that the Act supposedly targets in the case of national pharmacy chains. That alone would serve as strong evidence that the Act's stated purpose is pretextual, regardless of whether any version of it ever covered RxPreferred. And if the evidence shows that the Act was changed intentionally to carve out RxPreferred or its owners, then that too is extremely probative evidence. Either way, basic information about RxPreferred's

ownership, Board members, and managers bears directly on the claims in this case.

Because this basic information is kept in the ordinary course and could be produced in a single email, RxPreferred lacks any legitimate basis for an undue burden objection. In any event, "courts have viewed the Rule 45[] prohibition against unduly burdening a non-party through a different lens when the non-party is not truly disinterested." *United Biologics, LLC v. Amerigroup Tennessee, Inc*., 2022 WL 2286197, at *5 (E.D. Tenn. June 23, 2022) (quotation marks omitted). And "while [RxPreferred] is a non-party to this litigation," it "has an interest" in it. *Id.* It worked with the TPA on the bill, testified in support of it, and provided comments on how certain language in the amendments should be written. Further, although it is unclear why the identity of those running a company with nearly $200 million in annual revenue must be kept secret, Plaintiffs have offered an attorneys-eyes-only protective order to alleviate such concerns.

Accordingly, CVS is entitled to information showing who runs and owns RxPreferred. CVS also is entitled to RxPreferred's communications concerning the Act and similar issues.[1] The information Plaintiffs seek will serve as evidence that the Act was crafted to favor in-state interests, and that the law's stated alternative purpose is pretextual. *McNeilus Truck & Mfg., Inc. v. Ohio*, 226 F.3d 429, 443 (6th Cir. 2000).

[1] Plaintiffs understand that RxPreferred is working on running the revised search terms and will produce responsive, non-privileged documents that hit on these search terms. For additional information, Plaintiffs respectfully refer the Court to the letter dated September 10, 2026, regarding the discovery requests, which is attached as Exhibit D.

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. The FAIR Rx Act and the consolidated challenges. ........ 2

B. SB 2040. ........ 2

C. Non-party discovery and the Subpoenas. ........ 4

III. LEGAL STANDARD ........ 5

IV. ARGUMENT ........ 6

A. The Subpoenas Seek Irrelevant Information and Cannot Reconstruct Legislative Motive. ........ 7

1. CVS's factual premise on relevancy is affirmatively refuted by RxPreferred. ........ 7

2. The dormant Commerce Clause claim turns on the Act's text and effects, not RxPreferred's private files. ........ 8

3. The federal preemption and Takings claims likewise do not require RxPreferred discovery. ........ 10

B. The Document Subpoena Imposes an Undue Burden on a Non-Party. ........ 11

1. RxPreferred's non-party status requires heightened protection. ........ 11

2. The minimal relevance of the requested records cannot justify their burden. ........ 12

3. CVS's argument that RxPreferred is not a "disinterested" non-party should be rejected. ........ 12

4. The ownership and governance demands threaten retaliation against RxPreferred's board members and shareholders. ........ 14

C. The Subpoenas Seek Confidential Commercial Information Without Substantial Need. ........ 15

1. RxPreferred's ownership, network, and reimbursement records are highly sensitive; disclosure to CVS would cause competitive harm. ........ 16

2. CVS cannot show the substantial need Rule 45(d)(3)(C) requires. ........ 17

D. The Deposition Subpoena Independently Imposes Undue Burden and Duplicates Existing Discovery. .......... 17

1. The deposition topics rest on the same flawed premise and are not relevant. .......... 18

2. The deposition would be cumulative of documents and the Malone Declaration. .......... 19

3. Preparing a corporate designee would be disproportionate. .......... 19

E. In the Alternative, the Court Should Narrow and Condition Any Remaining Discovery. .......... 20

V. CONCLUSION .......... 20

CERTIFICATE OF SERVICE .......... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abundes v. Athens Food Servs.*, LLC,
No. 3:14-cv-1278, 2015 WL 13664280 (M.D. Tenn. Sept. 18, 2015) .................................. 5, 6

*Allen v. Howmedica Leibinger, GmbH,*
190 F.R.D. 518 (W.D. Tenn. 1999) ......................................................................................... 16

*Am. Gen. Life Ins. Co. v. Harshman*,
299 F.R.D. 157 (E.D. Ky. 2014)............................................................................................... 17

*Ass'n of Equip. Mfctrs. v. Burgum*,
427 F. Supp. 3d 1082 (D.N.D. 2019)........................................................................................ 14

*Bailey v. Callaghan*,
715 F.3d 956 (6th Cir. 2013) ....................................................................................................... 9

*Bd. of Educ. of Westside Cmty. Sch. v. Mergens*,
496 U.S. 226 (1990).................................................................................................................... 9

*Brown Bag Software v. Symantec Corp.*,
960 F.2d 1465 (9th Cir. 1992) ................................................................................................... 15

*Burgess v. Doji, Inc.*,
No. 3:25-cv-495, 2026 WL 1599393 (M.D. Tenn. June 4, 2026) ............................................. 6

*Conley v. United States*,
No. 2:10-CV-444, 2011 WL 5326133 (S.D. Ohio Nov. 4, 2011) ..................................... 13, 19

*Crane Plastics Co. v. Louisiana-Pacific Corp.*,
119 F. Supp. 2d 749 (S.D. Ohio 2000) ...................................................................................... 16

*Damsi v. Tarpstop, LLC*,
No. 3:21-CV-0953, 2023 WL 9186657 (N.D. Ohio Oct. 19, 2023).................................. 13, 19

*DISH Network, L.L.C. v. WNET*,
No. 13-cv-00832, 2014 WL 1628132 (D. Colo. Apr. 24, 2014) ............................................. 16

*EEOC v. Tepro, Inc.*,
38 F. Supp. 3d 883 (E.D. Tenn. 2014)........................................................................................ 17

*Foresight Coal Sales, LLC v. Chandler*,
60 F.4th 288 (6th Cir. 2023) ....................................................................................................... 8

*Fusion Elite All Stars v. Varsity Brands, LLC*,
340 F.R.D. 255 (W.D. Tenn. 2022) ........................................................................................... 11

*Garcia v. United States*,
469 U.S. 70 (1984)...................................................................................................................... 9

*Godfrey v. Fed. Bureau of Investigation, CJIS, NICS Section*,
No. 5:26-cv-13, 2026 WL 906668 (E.D. Ky. Apr. 2, 2026).................................................... 10

*In re DaimlerChrysler AG Sec. Litig.*,
216 F.R.D. 395 (E.D. Mich. 2003) .......... 19

*In re Modern Plastics Corp.*,
890 F.3d 244 (6th Cir. 2018) .......... 6, 11

*Lewis v. ACB Bus. Servs., Inc.*,
135 F.3d 389 (6th Cir. 1998) .......... 18

*Lingle v. Chevron U.S.A.*,
544 U.S. 528 (2005) .......... 10

*Lyons v. My Pillow, Inc.*,
No. 23-1308 (6th Cir. Dec. 6, 2023) .......... 19

*Nickels v. Grand Trunk W. R.R.*,
560 F.3d 426 (6th Cir. 2009) .......... 10

*Omokehinde v. Detroit Bd. of Educ.*,
251 F.R.D. 261 (E.D. Mich. 2007) .......... 19

*Perrigo Co. v. United States*,
294 F. Supp. 3d 740 (W.D. Mich. 2018) .......... 19

*Sagebrush Solutions, LLC v. Health Mgmt. Sys.*,
289 F.R.D. 251 (S.D. Ohio 2013) .......... 6, 19

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
825 F.3d 299 (6th Cir. 2016) .......... 14

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*,
474 F.3d 288 (6th Cir. 2007) .......... 18

*Truesdell v. Friedlander*,
80 F.4th 762 (6th Cir. 2023) .......... 8

*U.S. Steel Corp. v. United States*,
730 F.2d 1465 (Fed. Cir. 1984) .......... 15

*United Biologics, LLC v. Amerigroup Tennessee, Inc.*,
No. 3:19-cv-180, 2022 WL 2286197 (E.D. Tenn. June 23, 2022) .......... 12

*United States v. O'Brien*,
391 U.S. 367 (1968) .......... 9

*United States v. Serta Assocs., Inc.*,
29 F.R.D. 136 (N.D. Ill. 1961) .......... 16

*Univ. of Tenn. Rsch. Found. v. Caelum Biosciences, Inc.*,
No. 3:19-cv-508, 2022 WL 19403696 (E.D. Tenn. July 1, 2022) .......... 6

*Va. Dep't of Corr. v. Jordan*,
921 F.3d 180 (4th Cir. 2019) .......... 11

*Whole Woman's Health v. Smith*,
896 F.3d 362 (5th Cir. 2018) .......... 12

**Statutes**

Tenn. Code Ann. § 56-7-3102(1) ... 3, 7

Tenn. Code Ann. § 63-10-204(36) ... 3

**Rules**

Fed. R. Civ. P. 26 ... 6

Fed. R. Civ. P. 30 ... 19

Fed. R. Civ. P. 45 ... 5, 11, 15, 16

Local Rule 5.03 ... 14

Local Rule 45.01 ... 5

**Other Authority**

Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment ... 15

## I. INTRODUCTION

Non-party RxPreferred Benefits, LLC ("RxPreferred") respectfully submits this Motion to Quash Subpoena Duces Tecum, Partially, and Subpoena to Testify at a Deposition and/or Motion for Protective Order. The motion concerns two subpoenas CVS served on RxPreferred: the Document Subpoena and the Deposition Subpoena. RxPreferred asks the Court to quash Request Nos. 12 through 17 of the Document Subpoena, together with the related ownership records CVS requested on October 26, 2026, and to quash the Deposition Subpoena or, alternatively, to enter a protective order.

CVS seeks the discovery on the theory that SB 2040, as introduced, would have reached RxPreferred and that later amendments "carved" it out. RxPreferred's position is that no version of SB 2040, as introduced, as amended, or as enacted, would have applied to it, and therefore, no discovery regarding its ownership, governance, and/or control would be relevant. RxPreferred did, however, respond to the Document Subpoena and produced communications and documents concerning the Act, in general, that it had in its possession, custody, and/or control, which were primarily interactions with another non-party, the Tennessee Pharmacists Association, regarding the Act. RxPreferred has conferred with CVS since September, but the parties have not resolved their disputes over RxPreferred's ownership, governance, and commercial records or the Deposition Subpoena.

As explained in Part IV, RxPreferred contends that the challenged discovery (1) is not relevant to CVS's dormant Commerce Clause, preemption, or Takings claims; (2) imposes an undue and disproportionate burden on a non-party; (3) seeks confidential commercial information without substantial need and risks retaliation against RxPreferred's board members and equity holders; and (4) as to the deposition, is cumulative of RxPreferred's production and sworn declarations.

## II. BACKGROUND

### A. The FAIR Rx Act and the consolidated challenges.

The FAIR Rx Act is a structural regulation of the pharmacy market. The consolidated plaintiffs (CVS, Express Scripts, PCMA, and UnitedHealth) filed pre-enforcement constitutional challenges. Their pleadings assert claims under the dormant Commerce Clause, ERISA, and Medicare Part D, and, in some cases, under TRICARE and the Fifth Amendment's Takings Clause. Initial Case Mgmt. Order § B, D.E. 92.

### B. SB 2040.

Plaintiffs allege that SB 2040, as introduced, "would have swept in RxPreferred Benefits along with its out-of-state competitors." ESI Am. Compl. ¶ 109; *see* CVS Compl. ¶ 8; PCMA Compl. ¶ 11; Ex. D at 1–2. But that is not the case. No version of the Bill, as introduced, as amended, or as enacted, would have impacted RxPreferred or its owners, board members, or managers.

SB 2040 was filed on January 22, 2026, and introduced on February 2, 2026, by Senator Harshbarger, with House Bill 1959 sponsored by Representative Scarbrough; both versions contain the same operative text. S.B. 2040, 114th Gen. Assemb., 2d Reg. Sess. (Tenn. 2026) (as filed Jan. 22, 2026, and as introduced Feb. 2, 2026), attached hereto as Ex. H. The bill described itself as an act "relative to the ownership or control of pharmacies by pharmacy benefits managers." *Id.* Its operative prohibition provided that "a pharmacy benefits manager shall not, directly or indirectly, acquire, hold, control, or otherwise possess any ownership or beneficial interest in, or exercise control over, a pharmacy license or a pharmacy license holder." *Id.* § 2(b)(1).

Mr. Malone attests that, from January 1, 2025 to the date of his declaration, RxPreferred was not an "affiliate" or "beneficial owner" of any pharmacy; did not "control" any Tennessee

pharmacy, whether by overlapping management, ownership, or otherwise; did not convey exclusive dispensing authority to any pharmacy; and did not hold any ownership or beneficial interest in, or exercise control over, a pharmacy license or license holder. Declaration of Jeff Malone ("Malone Decl.") ¶¶ 3, 9–12, 14, attached hereto as Ex. F; *see* Letter to Plaintiffs, p. 2, attached hereto as Ex. G. He further attests that no person or entity exercising managerial control in RxPreferred, including its board members, directors, officers, and executive management, held, controlled, affiliated with, or held a beneficial interest in a Tennessee pharmacy license or license holder. Malone Decl. ¶ 13.

The bill was then amended. Senate Amendment No. 1 replaced the introduced text with a prohibition on any person or entity owning, operating, or controlling any part of a pharmacy and, at the same time, any part of both a "covered entity" and a pharmacy benefits manager, "regardless of the percentage of ownership interest." S. Amend. No. 1 to S.B. 2040, § 2(b)–(c), attached hereto as Ex. J. Senate Amendment No. 2 replaced that version in its entirety, substituting "health insurance issuer" for "covered entity" and adding a five-percent threshold; the House's first amendment used the same language and never included "covered entity"; and the remaining amendments broadened the employer exception and moved the operative date. S. Amend. Nos. 2–4 to S.B. 2040; H. Amend. Nos. 1–3 to H.B. 1959 (Ex. J). Each amended version thus addressed a person or entity holding three interests at once: part of a pharmacy, which each version limited to "a location licensed by this state," Tenn. Code Ann. § 63-10-204(36); part of a covered entity or health insurance issuer; and part of a PBM. Mr. Malone further attests that, from January 1, 2025 to the present, no person or entity that directly or indirectly owns, operates, controls, or directs the operation of, the whole or any part, of RxPreferred, at any percentage, has owned, operated, controlled, or directed the operation of any part of a Tennessee-licensed pharmacy and, at the same time, any part of a "covered entity" as defined in Tenn. Code Ann. § 56-7-3102(1) or

a health insurance issuer. Supp. Decl. of Jeff Malone ¶ 3 ("Supp. Malone Decl."), attached here to as Ex. K.

The General Assembly enacted the bill as Public Chapter 1111, which the Governor approved on May 22, 2026. It provides that, on and after July 1, 2028, a person or entity shall not directly or indirectly own, operate, control, or direct the operation of any part of a pharmacy and, at the same time, any part of both a health insurance issuer and a pharmacy benefits manager, and that the prohibition applies only "when the percentage of ownership interest held by a person, entity, or affiliate is greater than five percent (5%)." 2026 Tenn. Pub. Acts ch. 1111, § 2(b)–(c), attached hereto as Ex. I. Mr. Malone attests that neither RxPreferred nor any person affiliated with, controlling, or holding a beneficial interest in it falls within the enacted prohibition. Malone Decl. ¶ 15.

### C. Non-party discovery and the Subpoenas.

Plaintiffs have subpoenaed, among others, the Tennessee Pharmacists Association and its officers and lobbyist, individual pharmacists, six sitting legislators, legislator-affiliated pharmacies, two trade associations and their officers, and RxPreferred, and those subpoenas have generated multiple motions to quash and to compel. Joint Status Report, D.E. 94, P.ID 2227–29; D.E. 73, 79, 93, 98. Even though RxPreferred agrees with many points made by the other non-parties, RxPreferred nonetheless opted to respond to the Document Subpoena to avoid an unnecessary discovery dispute.

RxPreferred served its Responses and Objections on August 28, 2026,[2] and produced RxPreferred_0000001 through RxPreferred_0000219. Ex. C; Ex. E (Oct. 19, 2026 Kopicki email).

---

[2] CVS has suggested that RxPreferred's objections were untimely under Rule 45(d)(2)(B). Ex. D at 2 n.2. By its terms, that 14-day deadline governs objections "to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises" or "to producing electronically stored information in the form or forms requested," not general objections to production on relevance, burden, and confidentiality grounds raised here. In any event, CVS agreed to

After CVS's September 10, 2026 deficiency letter and a September 22 meet and confer, RxPreferred disclosed its custodians and search methodology, ran CVS's search terms across three custodians for the period CVS chose, confirmed that no responsive text messages exist, provided hit reports showing more than 17,000 hits, and, on October 21, 2026, delivered the Malone Declaration. Ex. D; Ex. E (Oct. 2, 9, 19, 20, and 21, 2026 emails); Ex. F (Malone Declaration). On October 26, 2026, CVS described the Declaration as "a lawyered document," stated that it did not agree the Declaration "substitutes for records or for a deposition," and requested seven categories of records, including capitalization tables; each equity holder's, director's, and officer's interests in pharmacies and health insurers; the questions posed to, and responses from, the equity holders and board members in RxPreferred's inquiry; and records of distributions. Ex. E (Oct. 26, 2026 Kopicki email) at 3–7. While these conversations were ongoing, CVS issued the Deposition Subpoena on October 20, 2026, for a videotaped deposition on seventeen topics on November 4, 2026, and served it on RxPreferred on October 22, 2026 without providing any notice to counsel.[3] Ex. B.

## III. LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure governs the issuance of subpoenas to non-parties to civil litigation. Among other things, it admonishes parties to remain mindful of the burden that subpoenas can impose on non-parties: "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a

---

RxPreferred's request for additional time to respond, and the parties have since been meeting and conferring. The Court's duty to quash or modify a subpoena that subjects a non-party to undue burden or requires disclosure of protected matter and its authority to enter a protective order for good cause does not have a time constraint. And this motion is timely as to the Deposition Subpoena, which was issued on October 20, 2026, for a November 4, 2026 deposition.

[3] CVS also failed to serve a notice of deposition under Rule 30 prior to service of any subpoena on a deponent, in violation of Local Rule 45.01(c). LR 45.01(c).

person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "Under Rule 45, the court must quash or modify a subpoena that 'requires disclosure of privileged or other protected matter, if no exception or waiver applies[,] or ... subjects a person to undue burden.'" *Abundes v. Athens Food Servs.*, LLC, No. 3:14-cv-1278, 2015 WL 13664280, at *2 (M.D. Tenn. Sept. 18, 2015) (quoting Fed. R. Civ. P. 45(d)(3)(A)).

"While Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena, courts have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Burgess v. Doji, Inc.*, No. 3:25-cv-495, 2026 WL 1599393, at *1 (M.D. Tenn. June 4, 2026) (quoting *Abundes*, 2015 WL 13664280, at *2). "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." *Univ. of Tenn. Rsch. Found. v. Caelum Biosciences, Inc.*, No. 3:19-cv-508, 2022 WL 19403696, at *3 (E.D. Tenn. July 1, 2022) (quoting *Sagebrush Solutions, LLC v. Health Mgmt. Sys.*, 289 F.R.D. 251, 253 (S.D. Ohio 2013)). In assessing undue burden, courts consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *In re Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (citation omitted). Rule 26(c) separately authorizes the Court, for good cause, to forbid discovery or limit its scope to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

## IV. <u>ARGUMENT</u>

The consolidated cases present questions that turn principally on statutory text, federal preemption doctrine, and the Plaintiffs' own alleged injuries and expectations, not a non-party competitor's private business records or testimony. CVS has the public legislative file, the statute's

text, its own pleadings, and its own business records; it does not need RxPreferred's private files to litigate claims that are principally legal. The Subpoenas should be quashed because (i) both rest on an irrelevant and factually wrong carve-out theory, (ii) the Document Subpoena seeks disproportionate and confidential commercial discovery from a non-party competitor, and (iii) the Deposition Subpoena adds no legitimate discovery value because its topics duplicate RxPreferred's production and declarations and would impose the separate burden of preparing a corporate designee.

### A. The Subpoenas Seek Irrelevant Information and Cannot Reconstruct Legislative Motive.

#### 1. CVS's factual premise on relevancy is affirmatively refuted by RxPreferred.

CVS's only justification for discovery from RxPreferred is a factual premise that the record refutes: that SB 2040, as introduced, would have reached RxPreferred and that later amendments carved it out. Plaintiffs' allegation is false, as demonstrated by sworn statements of RxPreferred. The introduced bill's operative prohibition ran in one direction only, barring a PBM from holding an interest in or control over a pharmacy license or license holder; it did not reach the owners of a PBM. *See supra* Part II.B. RxPreferred held no such interest, and no person exercising managerial control in RxPreferred held an interest in a Tennessee pharmacy license or license holder. Malone Decl. ¶¶ 9–14. Nor would any amended version have reached RxPreferred or any person with an ownership interest in or control over it. RxPreferred itself owns no pharmacy, so it fell outside every amended version regardless of whether its own employee health plan might make it a "covered entity" under Tenn. Code Ann. § 56-7-3102(1). Malone Decl. ¶¶ 9–12. And no person or entity that directly or indirectly owns, operates, controls, or directs the operation of, the whole or any part, of RxPreferred, at any percentage, has held part of a Tennessee-licensed pharmacy together with part of a covered entity or a health insurance issuer. Supp. Malone Decl. ¶ 3. The

enacted statute is narrower still, reaching only ownership interests greater than five percent in a pharmacy, a PBM, and a health insurance issuer, and neither RxPreferred nor anyone affiliated with it falls within that prohibition. Malone Decl. ¶ 15.

Because no version of the bill would have applied to RxPreferred, discovery into who owns and controls RxPreferred cannot show whether the bill was drafted or narrowed to protect RxPreferred, or any other matter relevant to CVS's claims. And CVS's mistaken allegation does not justify forcing RxPreferred to prove a negative through wholesale production of private corporate records or a corporate-designee deposition.

**2. The dormant Commerce Clause claim turns on the Act's text and effects, not RxPreferred's private files.**

CVS's relevance theory is, in substance, a legislative-motive theory dressed up in the language of "effects." CVS contends that the FAIR Rx Act as originally introduced would have applied to RxPreferred; that later amendments exempted RxPreferred or similarly situated pharmacies; and that RxPreferred's internal records and corporate testimony will reveal that the General Assembly intended to discriminate against out-of-state competitors such as CVS. See CVS Compl. ¶¶ 8, 88–93, 158–63; Ex. D at 1–2. The theory is wrong on the facts and wrong as a matter of law. RxPreferred was not covered by the bill as introduced, as amended, or as enacted, *see supra* Part II.B, and the private files and testimony of a non-party that neither drafted nor enacted the law cannot establish discriminatory purpose,[4] discriminatory effect, or any other element of CVS's claims, making the requested discovery irrelevant.

---

[4] RxPreferred is not the triply integrated company the Act addresses. CVS has argued that the Defendants concede that RxPreferred is a "doubly integrated" entity, as somehow establishing relevancy. As a threshold matter, Defendants do not speak for RxPreferred, and they are incorrect that RxPreferred is "doubly integrated." But even if it were true, Defendants make the point that being "doubly integrated" has nothing to do with the Act. Even a "doubly" integrated structure lacks the pharmacy-PBM-insurer structure the Act regulates. Defs.' Mot. to Dismiss, 17 n.18, D.E. 76, P.ID 1540. As Defendants explain, the health-insurance-issuer trigger was added to address the multi-level vertical structures identified in public federal reports as creating incentives to steer

CVS's rationale for discovery from RxPreferred is legally irrelevant under binding Sixth Circuit precedent. The dormant Commerce Clause "concerns itself with protectionist 'effects, not motives,'" and courts "generally find a law's text conclusive as to its objectives." *Truesdell v. Friedlander*, 80 F.4th 762, 772-73 (6th Cir. 2023) (citing *Foresight Coal Sales, LLC v. Chandler*, 60 F.4th 288, 296, 300 (6th Cir. 2023)). That principle applies equally to a statute's amendment history. The give-and-take of the legislative process (including narrowing a bill's scope, adding exemptions, or responding to stakeholder input) is the ordinary business of lawmaking, *not* evidence of an illicit purpose. Courts "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive," *Bailey v. Callaghan*, 715 F.3d 956, 960 (6th Cir. 2013) (quoting *United States v. O'Brien*, 391 U.S. 367, 383 (1968)), and what matters is "the legislative *purpose* of the statute," not the "*motives* of the legislators who enacted the law," let alone the motives or lobbying activity of a private, non-party entity that may have communicated with legislators about a provision. *Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 249 (1990) (plurality op.) (emphasis in original*).*

For that reason, CVS's effort to construct legislative purpose from a non-party's internal files and testimony is misplaced. If courts are reluctant to infer legislative intent from statements by legislators themselves, it follows that the sensitive records and testimony of a third-party business cannot establish the collective intent of the Tennessee General Assembly. *See Garcia v. United States*, 469 U.S. 70, 76 (1984) ("the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill"). Whether RxPreferred advocated for, benefited from, or had nothing to do with the amendment CVS points to, the Act must be judged by what it says and does, not by what CVS hopes to infer from a non-party competitor's records or witness.

---

patients, share data, and favor affiliated pharmacies, not to confer a special exemption on RxPreferred. *Id.* at 13, P.ID 1536.

Nor can RxPreferred's public testimony in support of PBM legislation convert it into a legislative actor or make its private files and designee testimony a proxy for the General Assembly's intent. RxPreferred's Vice President of Sales testified in public committee hearings, consistent with RxPreferred's support for stronger regulation of the conflicts inherent in vertical integration. Ex. G at 2. Testimony in a public hearing does not make a private company the author of a statute, and it does not open the company's ownership, governance, and commercial records to its competitors.

Even if a narrow slice of this theory had marginal relevance (such as communications with legislators about a specific amendment), RxPreferred has already produced, and is continuing to work with CVS on search terms for, its communications concerning the Act. *See* Ex. C; Ex. E (Oct. 21 and Nov. 2, 2026 Tullis emails). That does not justify broader discovery into capitalization tables, board composition, ownership records, network agreements, reimbursement rates, or deposition topics asking RxPreferred to speculate about legislative purpose. If CVS's theory is lobbying, the relevant discovery is lobbying communications and public legislative history, not RxPreferred's confidential business records. CVS also has less burdensome sources for any market-wide effects theory: the legislative record, amendment history, committee testimony, lobbyist disclosures, public pharmacy-licensing and corporate filings, party records, its own business data, and expert analysis. CVS's own Complaint already relies on legislative-history materials. *See* CVS Compl. ¶¶ 103-118.

**3. The federal preemption and Takings claims likewise do not require RxPreferred discovery.**

CVS's ERISA and Medicare Part D claims turn on the text, structure, and operation of federal statutes and regulations, together with the text of SB 2040. "Whether federal law preempts state law is a question of law," not a question of fact requiring discovery into a competitor's business records. *Godfrey v. Fed. Bureau of Investigation, CJIS, NICS Section*, No. 5:26-cv-13,

2026 WL 906668, at *3 (E.D. Ky. Apr. 2, 2026); *see also Nickels v. Grand Trunk W. R.R.*, 560 F.3d 426, 429 (6th Cir. 2009). CVS's Takings claim turns on CVS's own alleged property, investment-backed expectations, economic impact, and compliance costs. *See Lingle v. Chevron U.S.A.*, 544 U.S. 528, 538–39 (2005). RxPreferred's ownership records, reimbursement data, network contracts, internal communications, and corporate testimony bear on none of those issues.

**B. The Document Subpoena Imposes an Undue Burden on a Non-Party.**

Even if CVS could identify some marginal relevance, Rule 45 requires the Court to balance that need against the actual burden imposed on RxPreferred. Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv); *In re Modern Plastics*, 890 F.3d at 251. The balance strongly favors RxPreferred. RxPreferred is a non-party competitor that did not choose to litigate the constitutionality of SB 2040. It was drawn into this case only because Plaintiffs' complaints wrongly describe it as a protected "in-state" PBM that was "carved out" of SB 2040, an error RxPreferred asked Plaintiffs to correct before CVS served its subpoena. Ex. G. Because the requested records add nothing to the claims and impose significant burden and competitive risk, the balance favors quashing or narrowing the Document Subpoena.

**1. RxPreferred's non-party status requires heightened protection.**

Courts give non-parties heightened protection because they are strangers to the underlying dispute. Rule 45 requires this Court to quash or modify a subpoena if necessary to avoid "subject[ing] a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). This provision embodies the proportionality principles that govern discovery generally, with particular concern for third parties that bear unilateral obligations. *See, e.g., Fusion Elite All Stars v. Varsity Brands, LLC*, 340 F.R.D. 255, 261 (W.D. Tenn. 2022); *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). That protection matters here because CVS seeks information from a direct competitor that has no stake in the litigation comparable to a party's stake.

### 2. The minimal relevance of the requested records cannot justify their burden.

CVS seeks capitalization tables, shareholder identities, board composition, pharmacy interests, network offerings, reimbursement rates, and related commercial records. Responding would require custodian work, governance and commercial-system searches, confidentiality review, and counsel review, while providing CVS little or no information needed to prove its claims. "The small or non-existent incremental 'need' for and 'relevance' of this discovery alone impose[d] a burden on [the association], if it must produce documents unnecessary to the litigation." *Whole Woman's Health v. Smith*, 896 F.3d 362, 375 (5th Cir. 2018). The burden is especially disproportionate while Defendants' Motion to Dismiss remains pending and Plaintiffs continue serving broad non-party discovery. And it comes on top of the burden RxPreferred already bears. Although RxPreferred, like other non-parties, had grounds to seek relief from the Court earlier, it instead engaged in good faith to accommodate CVS: it produced all responsive documents containing correspondence relative to the Act, disclosed its custodians and search methodology, ran CVS's search terms across three custodians, provided hit reports, delivered a sworn declaration, and continues to work with CVS on search terms for its communications concerning the Act, all at substantial time and expense for a company that is not a party to this case. *See supra* Part II.C.

### 3. CVS's argument that RxPreferred is not a "disinterested" non-party should be rejected.

CVS contends that RxPreferred is not a "disinterested" non-party because it testified for the Act before two legislative committees, supports the policy underlying the Act, and wrote to Plaintiffs' counsel about the merits. Ex. D at 6. CVS relies on *United Biologics, LLC v. Amerigroup Tennessee, Inc.*, No. 3:19-cv-180, 2022 WL 2286197, at *5 (E.D. Tenn. June 23, 2022), but that decision does not eliminate Rule 45's protection. At most, it recognizes that a court

may weigh a burden objection "through a different lens" when the non-party has a substantial stake in the controversy. *Id.* There, the non-party owned 40% of the plaintiff and held two seats on the plaintiff's board. *Id*. RxPreferred has no comparable stake. It was never within the Act's reach, and public testimony, policy support, and a letter correcting false allegations do not make it a party-in-interest or convert irrelevant discovery into proportionate discovery. CVS's reliance on RxPreferred's communications with the Tennessee Pharmacists Association about the bill, Ex. E (Oct. 26, 2026 Kopicki email), fares no better: those communications bear, at most, on the legislative-communications requests the parties are still discussing, not on RxPreferred's ownership, governance, and commercial records.

CVS's escalating demands confirm the disproportionality of the Document Subpoena. What began as a request for documents concerning legislation that does not affect RxPreferred has become an effort to compel a non-party competitor to disclose who owns it, who governs it, what it pays its network pharmacies, and what it distributes to its equity holders. CVS has the documents RxPreferred identified as responsive, but continues to demand wholesale access to ownership, governance, network, and pricing records in hopes that those records will contradict RxPreferred's sworn and good-faith responses. Suspicion that a non-party's response is inaccurate, or that the non-party "should have something," is not a legitimate basis for compelled discovery. *See Damsi v. Tarpstop, LLC*, No. 3:21-CV-0953, 2023 WL 9186657, at *10 (N.D. Ohio Oct. 19, 2023) ("[t]he fact that a party may disbelieve or disagree with a response to a discovery request ... is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect" (internal quotation marks omitted)); *Conley v. United States*, No. 2:10-CV-444, 2011 WL 5326133, at *2 (S.D. Ohio Nov. 4, 2011) ("A party may not move to compel discovery on the basis of a mere suspicion that the producing party has additional information that it failed to disclose.").

### 4. The ownership and governance demands threaten retaliation against RxPreferred's board members and shareholders.

RxPreferred's board members and equity holders are not parties, witnesses, or subjects of any claim in this case. As RxPreferred explained in its Responses, its individual board members are and have been pharmacists who may be engaged, or may wish to be engaged, in business relationships with Plaintiffs, and disclosure of their identities in this posture heightens the risk of retaliation. Ex. C at 19–20. CVS's affiliate Caremark is a PBM that contracts with pharmacies to build its networks and sets the terms on which they are reimbursed. *See generally* CVS Compl., D.E. 1. Compelling RxPreferred to identify those individuals, their pharmacies, their percentage holdings, and the distributions they have received, and to hand that information to the company on the other side of those business relationships, creates a risk of commercial retaliation that has nothing to do with the merits. Courts have recognized the force of that concern where the party seeking discovery held power over the subpoenaed non-parties' contracts and the non-parties reasonably feared reprisal. *See Ass'n of Equip. Mfctrs. v. Burgum*, 427 F. Supp. 3d 1082, 1098 (D.N.D. 2019). RxPreferred has already experienced the consequences of Plaintiffs' inaccurate public allegations, which national news outlets repeated and which damaged RxPreferred's business relationships and professional reputation. Ex. G at 3.

An attorneys'-eyes-only designation does not eliminate that risk. Under this Court's rules, a confidentiality designation does not entitle material to be sealed if it is filed; the proponent of sealing must separately show compelling reasons, document by document. LR 5.03(c), (f); *see Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305–06 (6th Cir. 2016). Once the names and holdings of RxPreferred's owners enter the record of a contested constitutional case, there is no assurance they will remain confidential. Nor would an attorneys'-eyes-only designation adequately protect RxPreferred even before anything is filed. CVS and the other consolidated Plaintiffs are large, vertically integrated enterprises whose in-house attorneys work alongside the

business personnel who negotiate pharmacy networks, set reimbursement, and make contracting decisions. A protective order that allows in-house counsel to review RxPreferred's ownership, governance, and commercial records places that information in the hands of lawyers employed by RxPreferred's competitors, who cannot unlearn what they have read when they later advise on network participation, contracting, or competitive strategy. *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467-68 (Fed. Cir. 1984); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470–71 (9th Cir. 1992). Whatever the good faith of the individual lawyers, the risk of inadvertent use is real, and it falls entirely on RxPreferred. RxPreferred, as a non-party, has no means to monitor whether information disclosed to in-house counsel is kept from business personnel within those organizations, no visibility into how the information is stored or circulated internally, and no practical way to detect or prove a breach after the fact. That risk is especially acute here, where the information would identify individual pharmacists who own RxPreferred and who have, or may seek, business relationships with CVS. A confidentiality order cannot undo a disclosure, and an order that a non-party cannot police is not meaningful protection. Where, as here, the information has no legitimate bearing on the claims, the appropriate protection is not to compel its disclosure at all.

CVS's insistence on a rival's sensitive records risks exposing RxPreferred's directors, shareholders, pricing, and commercial relationships to uses that have nothing to do with the merits. "The spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues." Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment. Rules 26(c) and 45(d) empower the Court to protect a non-party from discovery that causes annoyance, embarrassment, oppression, or undue burden.

### C. The Subpoenas Seek Confidential Commercial Information Without Substantial Need.

### 1. RxPreferred's ownership, network, and reimbursement records are highly sensitive; disclosure to CVS would cause competitive harm.

Rule 45 also requires the Court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," Fed. R. Civ. P. 45(d)(3)(A)(iii), and permits it to do so where a subpoena requires disclosure of "a trade secret or other confidential research, development, or commercial information," Fed. R. Civ. P. 45(d)(3)(B)(i). The Document Subpoena demands information at the center of RxPreferred's competitive business: capitalization records, shareholder identities and proportions, board and officer composition, pharmacy affiliations, network offerings, and reimbursement rates. *See* Ex. A, Requests 12–17; Ex. C at 19–20, 26–27. Pharmacy network reimbursement rates, per-pharmacy prescription spend and volume data, and network offering details are highly confidential commercial information within Rule 45(d)(3)(B)(i). The risk is acute because CVS is a direct competitor, and anything it receives may be shared with the other consolidated Plaintiffs, which also compete with RxPreferred. Courts are reluctant to force a non-party competitor to disclose confidential information where relevance is weak. *See DISH Network, L.L.C. v. WNET*, No. 13-cv-00832, 2014 WL 1628132, at *9 (D. Colo. Apr. 24, 2014) (citing *United States v. Serta Assocs., Inc.,* 29 F.R.D. 136, 138 (N.D. Ill. 1961)) ("courts indicate reluctance 'to force a non-party competitor to divulge confidential information [when] . . . not convinced of the relevancy of the documents sought.'"); *see also Crane Plastics Co. v. Louisiana-Pacific Corp.*, 119 F. Supp. 2d 749, 751 (S.D. Ohio 2000); *Allen v. Howmedica Leibinger, GmbH,* 190 F.R.D. 518, 525 (W.D. Tenn. 1999). With RxPreferred's reimbursement rates, network terms, and cost structure in hand, CVS could, inadvertently or otherwise, inform its own pricing, network negotiations, and competitive strategy to RxPreferred's detriment, entirely apart from this litigation. Compelling that disclosure from a non-party to benefit its direct competitors is a misuse of the subpoena power. Fed. R. Civ. P. 45(d)(1), (d)(3)(B)(i).

### 2. CVS cannot show the substantial need Rule 45(d)(3)(C) requires.

CVS cannot show substantial need for RxPreferred's confidential records because its claims do not require this data. The dormant Commerce Clause claim turns on whether the Act discriminates against interstate commerce or unduly burdens it; the preemption claims turn on federal law; and the Takings claim turns on CVS's own property and expectations. None requires CVS to know RxPreferred's shareholders, board, reimbursement rates, or network offerings. No version of the bill as introduced, amended, or enacted would have "swept in" RxPreferred. RxPreferred has already attested, under penalty of perjury, that no person exercising managerial control in RxPreferred holds, controls, or is affiliated with a Tennessee pharmacy license or license holder, and that neither RxPreferred nor any person affiliated with, controlling, or holding a beneficial interest in it falls within the enacted prohibition. Malone Decl. ¶¶ 13, 15. RxPreferred has further attested that no person or entity that directly or indirectly owns, operates, controls, or directs the operation of, the whole or any part, of RxPreferred, at any percentage, has held an interest in a Tennessee-licensed pharmacy together with an interest in a covered entity or a health insurance issuer, and has described the inquiry on which that testimony rests. Supp. Malone Decl. ¶¶ 3. CVS is not owed ownership records to test these representations.

## D. The Deposition Subpoena Independently Imposes Undue Burden and Duplicates Existing Discovery.

The Deposition Subpoena imposes a distinct burden by requiring RxPreferred to identify, educate, and prepare a corporate designee to testify on seventeen broad topics. Courts retain broad discretion under Rule 26(c) to limit the manner and scope of corporate depositions to avoid undue burden. *Am. Gen. Life Ins. Co. v. Harshman*, 299 F.R.D. 157, 158 (E.D. Ky. 2014); *EEOC v. Tepro, Inc.*, 38 F. Supp. 3d 883, 886 (E.D. Tenn. 2014). CVS issued the Deposition Subpoena the day before RxPreferred delivered the Malone Declaration, without notice to RxPreferred's counsel, and unilaterally set the deposition for November 4, 2026. Ex. B. CVS served the subpoena

on October 22, 2026, and its October 26 email to counsel did not mention that it had done so. Ex. E (Oct. 26, 2026 Kopicki email; Nov. 2, 2026 Tullis email). The Deposition Subpoena should be quashed.

**1. The deposition topics rest on the same flawed premise and are not relevant.**

Nearly every deposition topic flows from CVS's mistaken carve-out theory. CVS seeks testimony about the purpose and effect of four Senate amendments (Topics 4–7), whether RxPreferred believed the Act would apply to it (Topic 8), the Act's expected effects on RxPreferred's owners and pharmacy affiliations (Topic 1), RxPreferred's ability to control Tennessee pharmacy license holders (Topic 2), and the identities and business interests of RxPreferred's board members, officers, shareholders, and stock-purchasing pharmacy owners (Topics 9–12). Ex. B, Topics 1–2, 4–12.

Those topics are irrelevant for the reasons stated in Part IV.A. Because RxPreferred was never covered, testimony about why the General Assembly supposedly exempted RxPreferred would explore a premise that is both factually wrong and legally immaterial.

The remaining deposition topics do not supply a reason to proceed. Topic 13 seeks reimbursement and referral-compensation testimony unrelated to CVS's claims; Topics 15 and 16 ask about other Tennessee statutes and Arkansas Act 624; and Topic 17 seeks discovery about discovery based on nothing more than CVS's suspicion that RxPreferred's response is incomplete. Ex. B, Topics 13, 15–17. Discovery must be tied to actual claims and defenses, *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998), and a litigant may not "go fishing," *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

### 2. The deposition would be cumulative of documents and the Malone Declaration.

RxPreferred has produced documents, agreed to run CVS's search terms across three custodians, and provided sworn declarations from its Chief Executive Officer addressing the same ownership and control issues CVS targets. Malone Decl. ¶¶ 1, 6–15; Supp. Malone Decl. ¶ 3; Ex. E (Oct. 21, 2026 Tullis email). Topics 3 and 14 seek the communications and testimony-preparation materials RxPreferred has produced or is producing. Ex. B, Topics 3, 14. A corporate designee prepared on those topics would largely recite the same information in a more burdensome form.

Disbelief is not a ground to compel discovery. *Damsi*, 2023 WL 9186657, at *10; *Conley*, 2011 WL 5326133, at *2. And where the relevant information can be obtained in a less intrusive manner, courts decline additional discovery. *Omokehinde v. Detroit Bd. of Educ.*, 251 F.R.D. 261, 267 (E.D. Mich. 2007); *Sagebrush*, 289 F.R.D. at 253–54. If CVS contends a discrete fact remains open, the proportionate course is a targeted supplemental declaration or written question, not a videotaped corporate deposition on seventeen topics.

### 3. Preparing a corporate designee would be disproportionate.

Rule 30(b)(6) would require RxPreferred to prepare one or more designees to testify to information "known or reasonably available to the organization" on seventeen topics spanning nearly two years and multiple bill versions, while RxPreferred is still working through the search-term population CVS generated. Fed. R. Civ. P. 30(b)(6); Ex. B, Notice at 1–2 & Topics 1–17. That burden is disproportionate to the marginal value of the testimony. The Sixth Circuit has affirmed quashing a non-party subpoena where any relevant material was "dwarfed" by the request's breadth and burden. *Lyons v. My Pillow, Inc.*, No. 23-1308, slip op. at 4–7 (6th Cir. Dec. 6, 2023) (unpublished), attached hereto as Ex. L; *see also In re DaimlerChrysler AG Sec. Litig.*,

216 F.R.D. 395, 403–05 (E.D. Mich. 2003); *Perrigo Co. v. United States*, 294 F. Supp. 3d 740, 744–45 (W.D. Mich. 2018). The same principle applies here.

### E. In the Alternative, the Court Should Narrow and Condition Any Remaining Discovery.

If the Court concludes that some subset of the requested material has sufficient relevance to survive the analysis above, meaningful relief is still warranted under Rules 26(c)(1) and 45(d)(3). To the extent the Court concludes CVS is entitled to any information concerning RxPreferred's ownership, the Court should order that it be provided in the least intrusive form, such as a targeted supplemental declaration answering specific questions that anonymizes individuals and entities, rather than through capitalization tables, equity registers, distribution records, or the identities of individual equity holders. If not, any production should proceed only under a protective order that (a) designates RxPreferred's ownership, governance, reimbursement, network, financial, and strategic information as "Attorneys' Eyes Only," restricting access to outside litigation counsel and retained experts bound by the order's terms and excluding in-house personnel of any Plaintiff; (b) prohibits use of the information for any purpose other than this litigation, including any business, contracting, or network decision; and (c) requires advance notice to RxPreferred before any such information is filed, so that RxPreferred may seek sealing under Local Rule 5.03. The Court should quash the Deposition Subpoena or, at minimum, limit any further inquiry to written questions on any discrete fact the Court finds remains open.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Non-Party RxPreferred Benefits, LLC respectfully requests that the Court (1) quash the Document Subpoena as to Request Nos. 12 through 17 and the ownership categories CVS demanded on October 26, 2026; (2) quash the Deposition Subpoena in its entirety; and (3) enter a protective order under Rule 26(c) forbidding the discovery described above. In the

alternative, RxPreferred requests that the Court narrow and condition any remaining discovery as set forth in Part IV.E, and grant such other relief as the Court deems just.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

***/s/ Mary Wu Tullis***
Bruce A. McMullen (BPR 18216)
Mary Wu Tullis (BPR 31339)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
(901) 526-2000 (phone)
bmcmullen@bakerdonelson.com
mtullis@bakerdonelson.com

***Counsel for Non-Party RxPreferred***

**CERTIFICATE OF SERVICE**

I hereby certify under Rule 5 of the Federal Rules of Civil Procedure that a true and exact copy of the foregoing **Motion** was served on counsel of record via operation of the Court's electronic filing system.

***/s/ Mary Wu Tullis***